**UNITED STATES of America, Plaintiff-Appellant,**

v.

**BROWNING, a corporation, Defendant-Appellee.**

**No. 75–1039.**

United States Court of Appeals, Tenth Circuit.

June 23, 1975.

Thomas E. Kauper, Asst. Atty. Gen., Carl D. Lawson and Laurence K. Gustafson, Attys., Dept. of Justice, and of counsel, Joseph J. Gercke and James E. Corkey, Attys., Federal Trade Commission, for plaintiff-appellant.

Gerald R. Miller, John P. Ashton, and Prince, Yeates, Ward, Miller & Geldzahler, Salt Lake City, Utah, for defendant-appellee.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is an appeal from a summary judgment entered in a suit brought pursuant to 15 U.S.C. § 45(*l*) by the United States against Browning, a corporation, to recover civil penalties and obtain injunctive relief for alleged violations of a consent cease and desist order which prohibited Browning from disseminating to any of its dealers any price lists without stating on such price lists that the prices are only "suggested or approximate."

Browning is one of the major distributors and sellers of firearms and firearm accessories in the United States. After investigation, the Federal Trade Commission issued a complaint against Browning charging that the latter, in combination with some of its authorized dealers, "had been engaged in a planned course of action to fix, establish, and maintain certain specified uniform prices at which its products are resold," in violation of 15 U.S.C. § 45. On the same date this complaint was filed, pursuant to the consent of the parties, the Com-

mission issued a consent order containing the following language:

I.  IT IS ORDERED that respondent, Browning Arms Company, a corporation, its subsidiaries, successors, assigns, officers, directors, agents, representatives, and employees, individually or in concert, directly or through any corporate or other device, in connection with the manufacture, distribution, offering for sale or sale of firearms and firearm accessories (hereinafter referred to in this order as "products"), in commerce, as "commerce" is defined in the Federal Trade Commission Act, do forthwith cease and desist from:

\*   \*   \*   \*   \*   \*

F.  Publishing, disseminating or circulating to any dealer, any price lists, price books, price tags or other documents indicating any resale or retail prices without stating on such lists, books, tags, or other documents that the prices are suggested or approximate.

\*   \*   \*   \*   \*   \*

V.  IT IS FURTHER ORDERED that the respondent herein shall, within sixty (60) days after service upon it of this order, file with the Commission a report, in writing, setting forth in detail the manner and form in which it has complied with this order.

In accord with the requirements of paragraph V of the consent decree, Browning submitted a compliance report, which read, in part, as follows:

No communications have been sent to the dealers concerning prices other than in compliance with the Order entered in this matter, and the mailing of our 1972 catalogue and wholesale price list which sets out the sale policy and suggested retail prices.

The Commission subsequently instructed Browning to make an additional report. Browning responded to this order by submitting a special report which included copies of various documents other than the 1972 catalogue and wholesale

price lists which had been sent to dealers after the effective date of the consent decree. These other documents sent by Browning to its dealers quoted retail prices, but did not state that such were only "suggested or approximate." Based on this supplemental report, and the documents attached thereto, the Commission certified the matter to the Attorney General as being indicative of violations by Browning of the cease and desist order.

The Government then brought the present suit against Browning to recover civil penalties on two grounds: (1) The Government sought $475,000 in penalties for Browning literature sent to its dealers which did not contain the required pricing language; and (2) the Government sought $25,000 in penalties for Browning's misstatements in its original compliance report.

After Browning filed its answer, considerable discovery was engaged in by both parties. The Government then moved for partial summary judgment on the issue of liability, with the matter of penalties and other relief to be reserved for future hearing. Browning also moved for summary judgment on the ground that the pleadings, depositions, answers to interrogatories and admissions showed that there was no genuine issue as to any material fact and that Browning was entitled to judgment as a matter of law. After hearing, the trial court denied the Government's motion, and granted the motion for summary judgment filed by Browning. The Government now appeals from the judgment entered in favor of Browning. We reverse.

At the outset it should be noted that we are not here concerned with Browning's 1972 catalogue and wholesale price lists which were sent to its dealers after the entry of the consent order. Those price lists did contain the limiting language required by the consent order, i. e., the prices were only suggested or approximate. Rather, we are here concerned with the *other* literature which Browning sent its dealers after the entry

of the consent order and it is agreed that this other literature did not contain the language required by the consent order. In this connection it is the basic position of Browning that though the literature in question was indeed sent to its dealers, it was nonetheless the intent that such literature would in turn be made available to the customers of the dealers. Hence the literature was not really disseminated to Browning's dealers but to the dealers' customers. Accordingly, argues Browning, since the literature in question was only "consumer oriented," it does not come within the prohibition of the consent order.

The trial court granted Browning's motion for summary judgment on the ground that, as concerns "consumer oriented" material, the consent order was ambiguous and unclear, particularly in the use of the phrase "to any dealer." The trial court went on to hold that this "terminological ambiguity" in the consent order was a defense to the noncompliance action brought by the Government. In thus holding, the trial court ruled that "good intention" on the part of Browning was no defense, citing United States v. H. M. Prince Textiles, Inc., 262 F.Supp. 383 (S.D.N.Y.1966), and United States v. Vitasafe Corporation, 212 F.Supp. 397 (S.D.N.Y.1962). The trial court also held that Browning was not entitled to notice, as such, before the Government instituted the present proceeding, relying on United States v. J. B. Williams Company, Inc., 498 F.2d 414 (2d Cir. 1974). So, the narrow issue presented is whether the consent order is itself clear and unambiguous and precludes the sending by Browning to its dealers of the documents in question.

The scope of a consent order is to be determined from its four corners. United States v. Armour & Co., 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971). In this regard we recognize that in United States v. ITT Continental Baking Co., 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148, the Supreme Court, although reaffirming the "four corners" rule, indicated that in construing a consent de-

cree, as in construing a contract, certain "aids to construction" are permitted. In the instant case we see no need to resort to any aids to construction, as in our view the consent decree is itself clear and unambiguous. In such circumstance our only task is to give full effect to the plain meaning of the consent order. Let us look again at the consent order.

The consent order directs that Browning shall cease and desist from "publishing, disseminating or circulating to any dealer any price lists, price books, price tags or other documents indicating resale or retail prices without stating on such lists, books, tags, or other documents that the prices are suggested or approximate." We fail to see the ambiguity perceived by the trial court in the consent order. It seems to us quite clear that under the order Browning was not to send to any of its dealers *any* document quoting prices, unless the limiting words were contained therein. In the instant case the documents in question were sent by Browning to its dealers, and the documents did contain price listings without the limiting language. The fact that the documents here in question were to be in turn distributed by the dealers to the ultimate customer does not bring it out from under the mandate of the order. The consent order is in our view free from ambiguity, and should be enforced as written.

In Federal Trade Commission v. Ruberoid Co., 343 U.S. 470, 72 S.Ct. 800, 96 L.Ed. 1081 (1952), appears the following pertinent comment:

> If the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be bypassed with impunity.

In the instant case the "prohibited goal" is to prevent Browning from in anywise fixing or setting the price at which its products are to be resold by its dealers. Applying then the rationale of *Ruberoid* to the instant case, the fact that Browning had in the past advised its dealers of its pricing policies through catalogues and wholesale price lists, and that such catalogues and price lists were now in line with the order, does not mean that Browning should be allowed to accomplish the same objective through different means, i. e., pricing documents sent to its dealers but intended to be passed on to the dealers' customers. The language of the present consent order is sufficiently broad and exact to close not only the road previously followed by Browning, but to close "all roads to the prohibited goal."

The record, if we understand it correctly, does not really bear out Browning's premise that all of the documents here involved were "consumer oriented." For example, one document, Exhibit E, is entitled: "From Browning—35 Ways to Make Your Cash Register Ring More." That particular document would certainly appear to be designed for Browning's dealers, and their cash registers, and not the ultimate customer. Another document, Exhibit G, entitled "Browning Law Enforcement Wholesale Price List," would also appear to have been directed, at least partially, to Browning's dealers. Paragraph 4 of that document reads as follows:

> Unless the dealer specifies otherwise, the pistols will be shipped and billed to the dealer at the special dealer price. If *you* prefer we will be glad to ship and invoice the law enforcement agency directly, allowing *you your 10% commission* on the sale. (Emphasis added).

The "you" in Paragraph 4 is obviously the dealer.

In the instant appeal we are concerned with the propriety of the trial court's action in granting Browning's motion for summary judgment. The trial court's order denying the Government's motion for partial summary judgment is not before us, as it is not an appealable order. Medical Development Corp. v. Industrial Molding Corp., 479 F.2d 345 (10th Cir. 1973).

Judgment reversed.