**UNITED STATES of America, Plaintiff,**

**v.**

**OLIN SKI COMPANY, INC., a corporation, and Olin Corporation, a corporation, Defendants.**

No. 78 Civ. 6031.

United States District Court,
S. D. New York.

Nov. 25, 1980.

John S. Martin, Jr., U. S. Atty., S. D. New York, New York City, for plaintiff by Nancy E. Friedman, Asst. U. S. Atty., New York City, Elliot Feinberg, Edward Manno Shumsky, P. Abbott McCartney, Bureau of Competition F. T. C., Washington, D. C.

Morgan, Lewis & Bockius, New York City, for defendants by Miles W. Kirkpatrick, James W. Harbison, Jr., Jeffrey W. King, New York City.

SOFAER, District Judge:

The United States brings this action pursuant to section 16(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 56(a), alleging that the defendants violated an FTC consent order. The Government seeks both civil penalties and injunctive relief as provided by section 5($l$) of the FTC Act, 15 U.S.C. § 45($l$). Defendants are Olin Corporation and its wholly owned subsidiary, Olin Ski Company ("Olin Ski").

Between 1973 and 1975, the FTC conducted an investigation of the relationship between Olin Ski, a manufacturer of skis and skiing equipment, and its independent retail dealers. The FTC determined that various Olin Ski practices violated section 5 of the FTC Act, 15 U.S.C. § 45. Specifically, the FTC concluded that Olin Ski, in conjunction with some dealers, had attempted "to fix, establish and maintain certain resale or re-

tail prices at which said products are resold to the general public." FTC Complaint at 2.

In 1975, the FTC proposed that Olin Ski enter into a consent agreement designed to end the alleged illegality. On April 19, 1976, following lengthy negotiations, Olin Ski executed a consent order. Over a year later, on August 8, 1977, the FTC signed the order. In the interim between the signing dates, Olin Ski entered into a program of voluntary compliance with the terms of the order.

On December 15, 1978, the United States filed this suit, alleging that Olin Ski and Olin had violated the consent order. The case was assigned to Judge Robert W. Sweet. Both parties moved for summary judgment—the United States solely on the issue of liability; the defendants on issues of liability and appropriate relief. On June 5, 1980, Judge Sweet issued an opinion in which he granted defendants' motion. On the same day, however, Judge Sweet discovered a potential conflict of interest and withdrew his opinion. The motions must now be reconsidered anew.

The Government asserts that Olin Ski violated paragraph I(H) of the consent order by including suggested retail price information in brochures sent to authorized dealers but intended for ultimate distribution to retail customers. Paragraph I(H) prohibits Olin Ski from:

> For two (2) years from the date on which this order becomes final, publishing or circulating any suggested resale or retail price for any of said products by price list, discount schedule, invoicing procedure, or pre-pricing of commodities or their containers, or by any other such means, to any reseller or authorized dealer.

The Government contends that the brochures were "price lists" within the meaning of paragraph I(H). In particular, it points to the fact that one group of brochures, containing information about accessory ski equipment, included an order form with the retail price for each item listed. The Government also argues that, even if these brochures are not deemed to be price lists, their distribution nevertheless constitutes dissemination of suggested retail price information by "other such means," in violation of the consent order.

■ The Supreme Court has held that the scope of a consent order "must be discerned within its four corners." *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). Where there is a dispute as to the meaning or the scope of an order, however, it "must be interpreted in light of its principal purpose." *United States v. J. B. Williams Co.*, 498 F.2d 414 (2d Cir. 1974), *quoted in United States v. Ancorp National Services, Inc.*, 516 F.2d 198, 201 (2d Cir. 1975).

■ Using this approach, the term "price list" should be defined narrowly to include only documents sent to dealers for the purpose of conveying wholesale prices. The consent order was designed to prohibit Olin Ski from bringing pressure on its dealers to adopt specified retail prices by barring communications of retail or resale prices that would tend to have a coercive effect. Including retail price information on wholesale price sheets, for example, or on discount schedules or invoicing procedures, would appear to make adoption of the designated price a condition of the wholesale arrangement between Olin Ski and its dealers. Similarly, the pre-pricing of merchandise or containers (where a manufacturer ships goods to dealers with retail price tags attached) might convey the impression to the dealers that they were bound to follow Olin Ski's price dictates. The inclusion of suggested retail prices in brochures intended for distribution to retail customers is not the same type of activity, even where dealers are likely to come into some contact with the brochures before they get to the customers.

■ For the same reason, the Olin Ski brochures did not disseminate the retail or resale price information "by any other such means." That clause of the consent order must have been intended to modify the list of methods of communication specifically

prohibited by paragraph I(H). Had the parties intended to prohibit Olin Ski absolutely from communicating price information in any form, including the word "such" would have been unnecessary. Under the consent order, not every communication of suggested retail prices to dealers was improper. Olin Ski was permitted to communicate such prices to authorized dealers orally. Furthermore, it was allowed to include suggested retail price information in advertisements appearing in nationally circulated consumer ski magazines, even though dealers undoubtedly would be exposed to the price information. The "other such means" language therefore does not appear to have been intended to prevent dealers from ever coming into contact with Olin Ski's suggested retail prices. The clause should be read to prohibit only those communications with potentially coercive effect.

The Government relies heavily on the Tenth Circuit's decision in *United States v. Browning*, 518 F.2d 714 (10th Cir. 1975), where a consent order was signed prohibiting the defendant from:

> Publishing, disseminating or circulating to any dealer, any price lists, price books, price tags or other documents indicating any resale or retail prices without stating on such lists, books, tags, or other documents that the prices are suggested or approximate.

The Government claimed there that the defendants violated the order by sending price information to dealers, allegedly intended for ultimate distribution to retail customers, without the required statement that the prices were suggested or approximate. Defendant contended that, because the information was actually intended for customers, and not for the dealers, its actions were not prohibited by the consent order. The Court rejected defendant's argument, holding that "[t]he fact that the documents here in question were to be in turn distributed by the dealers to the ultimate customer does not bring it out from under the mandate of the order." *Id.* at 717.

While the facts of this case are similar to those in *Browning*, there are crucial differences. The object of the order in *Browning*, requiring defendant to inform dealers that retail prices were suggested or approximate, was to prevent defendant from giving dealers the impression that retail prices were in any way fixed or inflexible. Communicating this information by any method without the required qualifying language would violate the purpose of the order. In this case, by contrast, the order was intended to prevent price information from being distributed in a manner that would appear coercive to dealers.[1] Defendants were permitted to disseminate price information, without any qualifying language, through such non-coercive means as oral communication or advertisements. The brochures that are the subject of the controversy in this case seem non-coercive and therefore fall outside the scope of the consent order.

■ An examination of the process leading up to the consent order also provides support for Olin Ski's position. The Supreme Court has made clear that courts may rely on aids to construction, including a review of the circumstances surrounding the formation of the consent order, without violating the "four corners" rule in *United States v. Armour & Co., supra. United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). A review of successive drafts of paragraph I(H) reveals that the clause began as a broad prohibition against Olin Ski communicating any retail price information and gradually became more limited in scope. An early proposed order would have barred Olin Ski from "[s]uggesting . . . any resale or retail price whatsoever" by any of

---

1. *See* Supplemental Memorandum of the United States in Support of its Motion for Summary Judgment at 10:

> In prohibiting for two years all written suggestions or [sic] resale prices by Olin Ski to its dealers, Paragraph I(H) ameliorates the

effects of Olin Ski's prior resale price fixing activities by eliminating the likelihood of dealers perceiving coercion in Olin Ski's continued communication of preferred resale prices.

a number of specified techniques "or by any other means." Olin Ski was explicitly permitted to advertise prices in national ski consumer magazines. As negotiations progressed, the word "suggesting" was changed to "publishing or circulating," and the word "whatsoever" was eliminated. Moreover, the word "such" was added to the "any other means" language, and the clause permitting advertising of retail prices was dropped, apparently because the parties believed that the practice would be permitted by the revised order. Thus paragraph I(H), as finally adopted, resulted from a series of changes designed to narrow the scope of the order, making it especially inappropriate to give the provision the broad reading necessary to find Olin Ski in violation.

The Government claims that a narrow reading of Olin Ski's obligations would be inconsistent with the terms of paragraph I(I) of the order. Paragraph I(I), a provision quite similar to that in issue in *Browning*, prohibits Olin Ski from:

> After the expiration of the time period stipulated in provision H above, publishing, disseminating or circulating to any reseller or authorized dealer any price list, price books, price tag, advertising or promotional material or other document indicating any resale or retail price of said products unless each reference is accompanied by a clear and conspicuous disclosure that the price is suggested or approximate.

The Government contends that, unless paragraph I(H) is read to bar "*all* direct written communications of suggested retail or resale prices to dealers," then paragraph I(I) would cause the anomolous result of permitting disclosure of retail price information without any qualifying language for the two years that paragraph I(H) was in effect, and then requiring the qualifying language thereafter. Supplemental Memorandum of the United States in Support of its Motion for Summary Judgment at 9–10.

This potential anomaly would exist even if the brochures distributed by Olin Ski were held to violate paragraph I(H). For example, Olin Ski was permitted to list retail prices in advertisements in consumer ski magazines, and there is no indication that any qualifying language was required. A strict reading of paragraph I(I), however, would force Olin Ski to include the qualifying language in all advertisements beginning two years after paragraph I(H) went into effect. In this situation, just as in the facts before this Court, Olin Ski would be under more rigorous constraint two years after the consent order went into effect then it would be immediately after the signing, a result that does not appear to be within the intention of either party to the consent order.

This apparent inconsistency between paragraphs I(H) and I(I) cannot be resolved easily. But it is unnecessary in this case to interpret paragraph I(I) or to attempt to find consistency where none may exist. The parties intended paragraph I(H) to govern the distribution of retail or resale price information for the first two years following the signing of the order and Olin Ski has not violated the terms of that paragraph. While courts should always strive to find internal consistency when interpreting documents such as this consent order, when none can be found the terms of the most applicable provision clearly must control.

Even if a contrary conclusion were reached on these motions, it is extremely doubtful that any significant sanction should be imposed for Olin Ski's allegedly improper activities. No final determination can be made on this issue, since it has not yet been fully briefed. But on the basis of the considerable material before the Court, largely uncontroverted, the conduct involved was relatively innocuous, innocently intended, and has been terminated.

Defendant's motion for summary judgment is hereby granted, with prejudice but without costs. Fed.R.Civ.P. 56(b).

So ordered.