OLIN CONSTRUCTION COMPANY, INCORPORATED, Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, and Peter J. Brennan, Secretary of Labor, Respondents.

No. 1134, Docket 74–2516.

United States Court of Appeals, Second Circuit.

Argued June 24, 1975.

Decided Sept. 9, 1975.

Donald J. Ball, Syracuse, N. Y., for petitioner.

William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, and Michael H. Levin, U. S. Dept. of Labor, Washington, D. C., for respondents.

Before CLARK, Associate Justice,* and MANSFIELD and MULLIGAN, Circuit Judges.

PER CURIAM:

This is a petition for review by Olin Construction Company (Olin)[1] of a final order of the Occupational Safety and Health Review Commission (Commission) entered in a proceeding by the Secretary of Labor against Olin for violations of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.*, 2 O.S. H.C. 3184. Petitioner raises four issues, claiming that: (1) the Administrative Judge and the Commission erroneously applied the "substantial evidence" rather than a "preponderance of the evidence" test as the quantum of proof necessary to meet the Secretary's burden of persuasion; (2) the Commission's findings and those of its Administrative Judge were not supported by "substantial evidence"; (3) the presence of employees in the trench for the purpose of shoring it was not in violation of the standards required by 29 C.F.R. 1926.652(b); and (4) the penalties by the Commission were not "proper and just." We see no merit in any of the contentions and affirm.

1. *Background of the Case:*

■ On August 9, 1973, the Secretary's Occupational Safety and Health Act Area Director Chester Whiteside and Compliance Officer Harold Pauley inspected a 20-mile sanitary sewer project along Lake Oneida, New York, on which Olin was digging trenches and laying pipe. On approaching one particular job site, they noticed a "flurry of activity," heard Olin employees on the project say "Here they come," and then saw a worker hurry up a ladder from the trench in which it stood. The inspectors were told by the Olin foreman on the job, Timothy Duerr, that two Olin employees, Cristian and Spainglar, had been working in the trench. Some shovels and other equipment were lying at the bottom of the trench. Both employees confirmed Duerr's statement on being questioned. The trench was some 9 feet deep, 12 to 15 feet long, and 9 to 10 feet wide; it was dug in an unstable lake bottom soil composed of sand, silt and loam; its walls were practically vertical; and part of the trench had been cut through the fill of an old gas pipe trench. The excavated soil had been piled near the lip of

* Associate Justice, United States Supreme Court (Ret.) sitting by designation.

1. Olin is a construction company employing 150 workers a day with an annual business of over 5 million dollars.

the trench.[2] The trench was not braced, save for two plywood sheets near where the ladder stood; these were secured by a single trench jack. Nor was the trench shored, sloped, or otherwise protected against collapse. As has been indicated there were "shovels, crowbars, some material . . . used to join pipes together," as well as other implements, at the bottom of the trench opposite the two plywood sheets.

Mr. Pauley is a graduate of Miami University at Oxford Ohio, with a B.S. and M.S. in geology. Before coming with the United States Department of Labor, he had worked eight years as a geologist and ten years with a large chemical firm. For two and one-half years he was Industrial Hygienist and Compliance Officer with the Secretary's OSHA division. He had engaged in extensive study of soils all during his professional career, including field work for eight years, and during college he had pursued courses in paleontology and conducted analyses of soil content, composition, and stability. Mr. Pauley testified as to the size and nature of the trench. He stated that the soil at the site of the trench was "loose, unconsolidated" and made up of sand, silt, and loam, lake bottom material that is "less stable than average soil." He further gave testimony that the sides of the trench were approximately at a 90 degree angle because the width of the bottom of the trench was approximately the same as the top, with no angle of repose. He further stated that the excavated soil was not placed an appropriate distance from the edge of the trench and that hence there was danger that the sides of the trench would cave in, covering and

suffocating the employees who might be in it. In recapitulating, he testified that "this failure to slope or shore . . . this excavation could cause such serious injury or death." Pauley and Whiteside took photographs that fully support their testimony, including the trench walls' angle of repose. While Whiteside's testimony on the physical layout, the angle of the sidewalls, and other matters was not as positive as that of Pauley, it in no way contradicts Pauley's testimony. As to the statements of Olin's Foreman Duerr and workmen Cristian and Spainglar about working in the trench on the morning of the inspection, Whiteside fully corroborated Pauley. In this connection, the Administrative Judge found:

> In so far as credibility is concerned, I give full credibility to the testimony of complainant's witnesses in so far as their conversations with the respondent's employees on the day in question so far as exposure in the trench on August 9 is concerned.

This finding, in our view, is dispositive of the conflict in the evidence as between Olin's witnesses and those of the Secretary's, and we find the preponderance of the evidence fully supports the findings of the Administrative Judge.

2. *The Failure of the Administrative Judge to Apply the Preponderance of the Evidence Test:*

 We conclude that on this record the failure of the Administrative Judge to apply the "preponderance" rather than the "substantial" evidence test was harmless.[3] In giving full credibility to the Secretary's witnesses, the Administrative Judge was not "completely ignoring" Olin's testimony, as petitioner

---

2. Non-serious violations of standards 29 C.F.R. 1926.201(a)(4) and 29 C.F.R. 1926.651(i)(1) were also charged. Neither was contested and both were affirmed by operation of law. No penalty was levied on the former non-serious violation but a penalty was paid on the latter (piling excavated soil within 2 feet of a trench). See appendix pp. 24-25.

3. It is unfortunate that this error was made. Perhaps, it reflects the dire need for an organized course of instruction for Administrative Judges. It is to be hoped that the agencies will not delay further taking such a step either through the Civil Service Commission, the Administrative Conference, the Federal Judicial Center or on their own initiative. This case is but one example of the rash of simple administrative matters that the Courts of Appeals must wade through because of such blunders.

claims. Indeed, he was but noting the glaring inconsistencies in its testimony. For example, Foreman Duerr at the hearing first testified that his men were installing bracing when the inspectors arrived and that this operation required one man to lower plywood panels, and then descend the ladder to secure the panels to the wall. Only this one employee was in the trench that morning, he said. Later, however, he testified that two men were in the trench, one halfway on the ladder holding the panel of plywood while the other person lowered it down with the ropes. Strangely, however, he gave neither of these explanations to Pauley and Whiteside on the morning of the event, merely stating that two men had been working in the trench. Indeed, at trial he denied making the latter statement. Furthermore, Duerr's estimate of the angle of repose of the side walls of the trench as "at least 45 degrees" was shown to be false by the photographs. Finally, the Olin Superintendent, Murphy, admitted that he knew nothing of geology, soil composition, or the instability of the lake region's soil, but he then characterized the soil involved here as firm, stable, sandy clay. When pressed, he admitted that old fill was unstable, that he would not consider sand very stable, and, finally, that clay itself was treacherous. Likewise on the question of the trench walls' angle of repose, he first flatly asserted that the walls were sloped at 45 degrees. When shown a photograph, however, he testified that there was not that much repose and, upon final consideration, decided the wall possessed a much steeper slope.

In any event, a violation was established here by the testimony of both Duerr and Murphy. Since the soil was "unstable" it was required to be shored and braced as dug even if it sloped.

See: Table P-1, 29 C.F.R. 1926.652(b); *United States v. Dye Const'n Co.,* 510 F.2d 78 (CA 10 1975).

In the light of the record in this regard and the strong direct evidence of the Secretary, both oral and documentary, the preponderance of the evidence not only supports the finding but it is so overwhelming that it would be a miscarriage of justice to rule otherwise. In so holding we are not watering down the applicability of the preponderance of evidence rule, which we emphasize must be strictly adhered to by Administrative Judges. We are merely making certain that justice is done without further delay and, more importantly, without depriving Olin of any of its rights, which at all points of this proceeding have been fully preserved.

 We also note that agency credibility resolutions are essentially nonreviewable unless contradicted by "uncontrovertible documentary evidence or physical facts." *NLRB v. Dixie Gas, Inc.,* 323 F.2d 433, 437 (5th Cir. 1963).

3. *Substantial Evidence on the Whole Record Supports the Findings of the Commission:*

In the light of our discussion in paragraph 2, *supra,* we need not belabor this point. It goes without saying that, in our view, the evidence as a whole more than substantially supports the findings.

Nor need we give weight to the remaining points by discussing them. Implicit in our view of the evidence in the case is Olin's guilt in failing to protect its hundreds of workers from the dangers incident to their employment as specifiedly directed by the Congress in OSHA and the Regulations issued thereunder. As for the penalties, we are amazed at their paucity, reflecting more of a license than a penalty.

Affirmed.