**MOHAWK EXCAVATING, INC.,**
**Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and W. J. Usery, Jr., Secretary of Labor, Respondents.**

No. 356, Docket 76–4068.

United States Court of Appeals,
Second Circuit.

Argued Dec. 28, 1976.

Decided Feb. 8, 1977.

Thomas C. Marshall, New Britain, Conn. (Weber & Marshall, Barry L. Thompson, Jr., New Britain, Conn., of counsel), for petitioner.

Nancy L. Southard, Atty., U.S. Dept. of Labor, Washington, D.C. (William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for App. Litigation, and Allen H. Feldman, Asst. Counsel for App. Litigation, U.S. Dept. of Labor, Washington, D.C., of counsel), for respondents.

Before SMITH, ANDERSON and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Mohawk Excavating, Inc. ("Mohawk") petitions for review of a final order of the Occupational Safety and Health Review Commission ("the Commission"). The order finds that Mohawk violated the Occupational Safety and Health Act of 1970 ("the Act"), 29 U.S.C. § 651 et seq., and imposes a $75 penalty. Mohawk claims that the Commission's finding is not supported by substantial evidence on the record and that the Act is unconstitutional. We find no merit in Mohawk's claims and order the Commission's order enforced.

## I.

On June 24, 1974 Harold Smith, the Commission's Area Director, inspected a sewer trench that Mohawk was digging in Enfield, Connecticut and then cited Mohawk for two "non-serious" violations of the Act;[1] he proposed a civil penalty of $75 for

---

1. Section 666(j) of the Act says:

    For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not

each violation. Mohawk contested both violations, and on March 27, 1975 a hearing was held before an Administrative Law Judge ("ALJ"). On October 29, 1975 the ALJ affirmed one violation and its $75 civil penalty and vacated the other violation and its proposed penalty. On February 11, 1976 the Commission approved the ALJ's decision. Pursuant to § 660(a) of the Act, Mohawk petitions this court for review of the Commission's final order.

This appeal involves Mohawk's alleged failure to have an adequate exit from the trench, in violation of 29 C.F.R. § 1926.-652(h).[2] Section 660(a) of the Act says "the findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive."

The government relies on several photographs and the testimony of Smith to support the ALJ's findings. The trench was approximately 35 feet long, 14 feet, 5 inches deep, 8 feet wide at the top, and 5 feet wide at the bottom. Inside the trench was a steel "trench box," which was 16 feet long, 10 feet high, and weighed 6 to 7 tons. Its sides were constructed of steel plates which were framed vertically and horizontally with steel girders, or "I" beams. The vertical distance between the "I" beam supports was from 2 to 3 feet. The vertical distance from the bottom of the trench to the lowest "I" beam was 4 to 5 feet. There was no ladder in the trench. Workers left the trench by using the "I" beams as steps to climb up the side of the trench box. Based on these undisputed facts, the ALJ found "the 'first step' of this means of exit less than desirable or adequate." (Appendix at 10). He suggested that Mohawk could weld a metal ladder to the inside of the trench box and observed that Mohawk had done this on some of its other trench boxes.

Noting that Mohawk's foreman had immediately put a ladder into the trench when Smith indicated the need for one on June 24 and that Mohawk had paid without protest penalties for a previous "serious" violation and a previous "non-serious" violation, the ALJ concluded that the $75 penalty for this violation was appropriate and reasonable.

To refute the ALJ's findings, Mohawk relies on the testimony of its President, two of its employees, and two engineers, all of whom said that climbing up the "I" beams was an adequate and safe way of leaving the trench. Mohawk says that Smith "did not go into the trench (or try to get out of it). . . . There is no evidence in the record that Mr. Smith bothered to have anyone try it or that the trial judge [ALJ] tried it. . . ." (Appellant's Reply Brief at 1).

There is no requirement that the trier of fact go to the scene of the alleged violation, especially when, as here, the condition of the trench at the time of the hearing was probably very different from its condition at the time of the alleged violation. The trier of fact—whether a judge or a jury—can weigh the photographs that are in evidence along with the testimony of Mohawk's witnesses. We have examined all the evidence on the record and conclude that there is substantial evidence on the record considered as a whole that Mohawk violated 29 C.F.R. § 1926.652(h). The photographs and testimony of the height of the "first step" taken in conjunction with the statements of the foreman and the use of ladders in other boxes are quite sufficient to overbalance the evidence of Mohawk in this regard.

## II.

We turn now to Mohawk's claims that the Act is unconstitutional.[3] Section

---

with the exercise of reasonable diligence, know of the presence of the violation.

**2.** 29 C.F.R. § 1926.652(h) says:

When employees are required to be in trenches 4 feet deep or more, an adequate means of exit, such as a ladder or steps, shall

be provided and located so as to require no more than 25 feet of lateral travel.

**3.** We have jurisdiction to consider the constitutionality of the Act, when an appeal is taken pursuant to § 660(a) of the Act. *Flemming v. Nestor,* 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *Anniston Mfg. Co. v. Da-*

658(a) of the Act authorizes the Secretary of Labor ("the Secretary") to issue a citation before holding a hearing, and § 659 of the Act authorizes the Secretary to notify the employer, prior to a hearing, of the proposed penalty. Relying on *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), and *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), Mohawk argues that this procedure violates the due process clause of the fifth amendment by not providing for a prior hearing.

Mohawk's argument ignores more recent cases which hold that in some situations due process requires only a prompt, not a prior hearing. *Mathews v. Eldridge,* 424 U.S. 319, 349, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 606, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975); *Arnett v. Kennedy,* 416 U.S. 134, 157, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

*Mathews, supra,* 424 U.S. 335, 96 S.Ct. 903, sets out three factors a court should consider in deciding whether the fifth amendment requires a prior hearing: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Mohawk is unclear as to what interest is affected by the procedure authorized by the Act. At any stage of the proceeding an employer accused of violating the Act can voluntarily pay the proposed penalty. If the employer refuses to pay voluntarily, § 666(k) of the Act authorizes the government to bring a civil action in the United

States District Court to recover the penalty. Mohawk has not yet paid the $75 civil penalty. The litigation costs to Mohawk are presumably the same whether the citation and proposed penalty are assessed before or after a hearing, since in either case Mohawk would presumably wish to present its evidence and legal arguments. Perhaps Mohawk's interest in a prior hearing is in avoiding the stigma of being identified as an alleged violator of the Act.[4]

The ALJ affirmed one violation and vacated the other. There is, however, nothing in the record indicating what stigma, if any, has attached to Mohawk from the issuance of the citation which was vacated by the ALJ. On this record there is no indication of a risk of an erroneous deprivation of Mohawk's interest.

We have already pointed out that "the broad purpose of the Act [is] 'so far as possible' to assure 'every working man and woman in the Nation safe and healthful working conditions. . . .'" *Brennan v. OSHRC,* 513 F.2d 1032, 1038 (2d Cir. 1975). Considering this purpose along with the risk of an erroneous deprivation of Mohawk's interest, we hold that §§ 658 and 659 of the Act do not violate the fifth amendment's due process clause. *Brennan v. Winters Battery Manufacturing Co.,* 531 F.2d 317, 324–325 (6th Cir. 1975), *cert. denied sub nom. Winters Battery Manufacturing Co. v. Usery, Secretary of Labor,* 425 U.S. 991, 96 S.Ct. 2202, 48 L.Ed.2d 815 (1976); *Beall Construction Co. v. OSHRC,* 507 F.2d 1041, 1045 (8th Cir. 1974); *McLean Trucking Co. v. OSHRC,* 503 F.2d 8, 11 (4th Cir. 1974).

### III.

Section 666 of the Act enumerates both civil and criminal penalties. Under § 666(c) of the Act, Mohawk was assessed a civil penalty of $75. Relying on the seven criteria for determining whether a penalty is

---

*vis,* 301 U.S. 337, 345–346, 57 S.Ct. 816, 81 L.Ed. 1143 (1937).

**4.** Section 658(b) of the Act says "each citation . . . shall be prominently posted . . .

at or near each place a violation referred to in the citation occurred."

criminal, as set forth in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), Mohawk argues that this is actually a criminal penalty and thus, under the sixth amendment, a jury trial is required.[5]

We recently rejected a similar claim: that civil penalties imposed under the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 *et seq.,* were in fact criminal. We said, "[W]hen Congress has characterized the remedy as civil and the only consequence of a judgment for the Government is a money penalty, the courts have taken Congress at its word. . . . In the face of a long line of contrary authority, appellants have not directed our attention to any civil penalty provision that has been held sufficiently 'criminal' in nature to invoke the protections of the Sixth Amendment." *United States v. J. B. Williams, Inc.,* 498 F.2d 414, 421 (2d Cir. 1974).

■ Mohawk has failed to meet the test set forth in *J. B. Williams.* We hold that the penalty authorized by § 666(c) of the Act is not a criminal penalty. *Clarkson Construction Co. v. OSHRC,* 531 F.2d 451, 455 (10th Cir. 1976); *Brennan v. Winters Battery Manufacturing Co., supra,* 531 F.2d 325; *Frank Irey, Jr., Inc. v. OSHRC,* 519 F.2d 1200, 1205 (3d Cir. 1975), *cert. denied on this issue,* 424 U.S. 964, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976); *Atlas Roofing Co. v. OSHRC,* 518 F.2d 990, 994–1011 (5th Cir. 1975), *cert. denied on this issue,* 424 U.S. 964, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976); *Beall Construction Co. v. OSHRC, supra,* 507 F.2d 1044.

## IV.

Mohawk invites us to follow the dissenting opinion in the *en banc* decision in *Frank Irey, Jr., Inc., supra,* 519 F.2d 1219–1225, and to hold that the Act violates the seventh amendment because it does not provide for a jury trial. The government urges us to hold that the seventh amendment does not apply to any of the proceedings under the Act. The Supreme Court has granted certiorari on this question,[6] 424 U.S. 964, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976), and has heard oral argument on it, 45 U.S.L.W. 3412 (Nov. 29, 1976).

■ We have considered whether we may avoid the constitutional question by so interpreting the Act that a jury trial is available.[7] While an argument might be made to this effect in the light of the provision for collection proceedings in the district court and the failure of the legislative history to mention the issue, we conclude that the more likely interpretation is that the Congress meant that the determination of violation and penalty be made in the administrative process and that the district court action be solely a collection procedure. The provision in § 660(a) that the judgment and decree of the court of appeals shall be final, and the remarks of Representative Steiger (Legislative History of the Occupational Safety and Health Act of 1970, S. 2193, P.L. 91–596 at 1220, 91st Cong., 2d Sess., Subcommittee on Labor of the Senate Committee on Labor and Public Welfare (1971) [hereafter "Legislative History"]), referred to later herein, accord with that interpretation.

---

**5.** Mohawk does not mention any of the other consequences—such as double jeopardy and self-incrimination under the fifth amendment and speedy trial under the sixth amendment and the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*—of our determining that this is a criminal penalty.

**6.** Certiorari was granted on the question "assuming *arguendo* that such civil penalties and enforcement procedures are civil in nature and effect, whether such procedures deny the defendant employer his right to jury trial guaranteed by the Seventh Amendment to the Consti-

tution." 424 U.S. 964, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976).

**7.** *Cf. Brennan v. Gibson's Products, Inc. of Plano,* 407 F.Supp. 154, 162 (E.D.Tex.1976) (absent clear statutory language and legislative history, court concludes Congress intended § 657(a) of the Act to require a search warrant). *But cf. Barlow's Inc. v. Usery,* 424 F.Supp. 437, 440 (D.Idaho, 1976) (absent clear statutory language and legislative history, court concludes Congress did not intend to require a search warrant under § 657(a) of the Act, and § 657(a) violates fourth amendment).

The Act provides two routes for judicial enforcement of a final order by the Commission. Section 660 of the Act provides that either "any person adversely affected or aggrieved by an order" or the Secretary may petition a United States Court of Appeals for review of the Commission's order. If the court of appeals enters a decree upholding the order, then § 660 contemplates the possibility of a contempt proceeding if the decree is not obeyed, and as part of the contempt proceedings, the court of appeals is authorized to assess the proposed civil penalty. Section 666(k) of the Act also authorizes the government to bring a civil action in a United States District Court to recover any civil penalties that are owed.[8]

These two sections of the Act reflect a compromise between the Senate bill and the House of Representatives bill, and the legislative history on their meaning is limited and not entirely clear. Section 10 of the Senate bill (S. 2193) provided for judicial enforcement only via a court of appeals and contempt proceedings. See S.Rep. No. 91–1282, 91st Cong., 2d Sess. (1970), reprinted at 1970 U.S.Code Cong. & Ad.News, pp. 5177, 5191, 5210–11. Section 11 of the Committee bill in the House of Representatives (H.R. 16785) provided for judicial enforcement only via a district court "by restraining order, injunction, or otherwise." Both H.R. 16785 and the Committee's analysis of it, H.R.Rep. No. 91–1291, 91st Cong., 2d Sess. (1970), reprinted in Legislative History, are silent as to whether there shall be a jury trial in the district court (see H.R.Rep. No. 91–1291, 24–26, 40–41, Legislative History, 854–56, 870–71). The House of Representatives did not adopt H.R. 16785. Instead it adopted H.R. 19200, which was offered as an amendment by Representatives Steiger and Sikes. Section 13 of H.R. 19200 provided for both review of the Commission's order in a court of appeals and suits in a district court to collect civil penalties; it also gave the district court jurisdiction to provide "additional relief as the court deems appropriate" to carry out the Commission's order.[9] Nothing in the debate in the House of Representatives explained this provision of H.R. 19200 and why it differed from H.R. 16785.

The Conference Report, No. 91–1765, 91st Cong., 2d Sess. (1970), reprinted at 1970 U.S.Code Cong. & Ad.News, pp. 5228, 5235, indicates that the House of Representatives agreed to contempt proceedings in a court of appeals and the Senate agreed to a suit in a district court to collect civil penalties. The provision in H.R. 19200 authorizing the district court to grant "additional relief" was deleted and the text changed. The only explanation of § 17(m) of the Conference bill, which is § 666(k) of the Act, during the Congressional debate on the Conference bill is Representative Steiger's brief explanation: "It should also be made clear that the provision for judicial review and enforcement of the Commission's orders contained in section 11 are exclusive. Section 17(m) authorizing actions in the name of the United States for the collection of penalties should be construed narrowly and is intended to be limited to any collection process which may be necessary in order to actually collect the penalty." Legislative History, 1220. There is no reference

8. Section 666(k) of the Act says:
   (k) Civil penalties owed under this chapter shall be paid to the Secretary for deposit into the Treasury of the United States and shall accrue to the United States and may be recovered in a civil action in the name of the United States brought in the United States district court for the district where the violation is alleged to have occurred or where the employer has its principal office.
9. Section 13 of H.R. 19200 says in pertinent part:
   (c) Civil penalties owed under this Act shall be paid to the Secretary for deposit into

the Treasury of the United States and shall accrue to the United States and may be recovered in a civil suit in the name of the United States brought in the Federal district court in the district where the violation is alleged to have occurred or where the employer has its principal office.
   (d) The Federal district courts shall have jurisdiction of actions to collect penalties prescribed in this Act and may provide such additional relief as the court deems appropriate to carry out the order of the Occupational Safety and Health Appeals Commission.

to this provision during the Senate debate on the Conference bill.[10]

The government argues:

It seems obvious that "jury trials would 'dismember' the statutory scheme" of OSHA [the Act] by inhibiting the development of safety and health expertise; dispersing enforcement determinations into hundreds of district courts creating manifold opportunities for delay and forum shopping; and injecting prohibitive costs into a streamlined procedure designed to afford cheap and easy adjudication to employers and employees alike.

(Appellee's brief at 19, footnotes omitted).

■ The government's fears of vast amounts of jury litigation and consequent crippling of safety enforcement may be overdrawn. However, the salutary health and safety purposes of the Act, the adaptability of the administrative process to their implementation and the relative meagerness of the penalties authorized [11] lead us to adhere to the view we tentatively indicated in the *Williams* case [12] and to join the Third Circuit in *Frank Irey, Jr., Inc., supra,* the Fifth Circuit in *Atlas Roofing, supra,* the Sixth Circuit in *Winters Battery Manufacturing Co., supra,* the Eighth Circuit in *Beall Construction Co., supra,* and the Tenth Circuit in *Clarkson Construction Co.,*

*supra.* We hold that a jury trial was not contemplated by the Act and that the seventh amendment is no bar to the imposition of civil penalties through the administrative process without jury trial in the enforcement of this Act as provided in § 660.[13]

We order the Commission's order enforced.

---

10. *Compare* the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 *et seq.,* where § 819(a)(4) limits the district court, in a proceeding by the government to collect an unpaid civil penalty, to a *de novo* jury trial on "all relevant issues, except issues of fact which were or could have been litigated in review proceedings before a court of appeals under section 816 . . . ." *National Independent Coal Operators' Ass'n v. Kleppe,* 423 U.S. 388, 393, 96 S.Ct. 809, 46 L.Ed.2d 580 (1976).

11. See *Olin Construction Co. v. OSHRC,* 525 F.2d 464, 467 (2d Cir. 1975) (per curiam): "As for the penalties, we are amazed at their paucity, reflecting more of a license than a penalty."

12. *United States v. J. B. Williams, Inc.,* 498 F.2d 414, 430 (2d Cir. (1974):

Perhaps it would be wiser for Congress to allow the FTC to impose penalties for violations of its orders, subject to limited judicial review, as it has done in some other cases,

see, *e. g.,* § 271 of the Immigration and Nationality Act, 8 U.S.C. § 1321,[18] predecessors

18 See also Marine Mammal Protection Act, 16 U.S.C. § 1375(a); Occupational Safety and Health Act, 29 U.S.C. § 666(i); Natural Gas Pipeline Safety Act, 49 U.S.C. § 1678.

of which were held valid in *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320 [29 S.Ct. 671, 53 L.Ed. 1013] . . . and *Lloyd Sabaudo Societa v. Elting,* 287 U.S. 329 . . . .

13. The Supreme Court will shortly pass on this seventh amendment question, as noted above. We think the matter properly one for administrative enforcement, not subject to the jury trial mandate of the seventh amendment. See *Pernell v. Southall Realty,* 416 U.S. 363, 383, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), *Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), and *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 48–49, 57 S.Ct. 615, 81 L.Ed. 893 (1937).