JOHN W.A. PARSONS, Plaintiff-Appellant and Appellee, v. RICHARD
ALLEN WINTER, Indiv. and d/b/a Richard/Allen/Winter, *et al.,* Defendants-
Appellees and Appellants.

First District (4th Division)   No. 85—0276

Opinion filed March 27, 1986.

William J. Harte, Ltd., Richard J. Prendergast, Ltd., and Tyrrell & Boylan, Ltd., all of Chicago (William J. Harte, James Prendergast, Thomas J. Tyrrell, of counsel), for appellant.

Samuel H. Young, P.C., of Skokie (Samuel H. Young, of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, John W.A. Parsons, brought an action against defendants, Richard Allen Winter, individually and doing business as Richard Allen Winter, Ltd., and Harold A. Meyer, individually and as an agent of Richard Allen Winter, Ltd., alleging fraud. The cause was tried to a jury, which returned a verdict in favor of plaintiff for $6,437.49 in compensatory damages and $9,333.33 in punitive damages. The trial judge granted defendants' motion for a new trial and denied their motion for a judgment notwithstanding the verdict (judgment *n.o.v.*). Plaintiff petitions us for leave to appeal from the trial judge's order granting a new trial pursuant to Supreme Court Rule 306(a)(1)(i) (103 Ill. 2d R. 306(a)(1)(i)). Defendants petition for leave to appeal from the trial judge's denial of their request for a judgment *n.o.v.* pursuant to Supreme Court Rule 306(a)(2) (103 Ill. 2d R. 306(a)(2)). We granted leave to appeal.

We affirm in part and reverse in part and remand.

On April 27, 1981, plaintiff filed a two-count complaint against defendants. In count I, he alleged that defendants were in the business of providing employment counseling and marketing services for unemployed executives. Plaintiff further alleged that between June 7 and August 2, 1976, defendants individually and together orally promised that (1) he would gain employment by using defendants' counseling services and marketing strategies within 60 days of completing defendants' initial testing and evaluation; (2) his salary would be $40,000 or greater; (3) defendants had never failed to find employment for a client; (4) defendants had personal and exclusive contact with between 280 and 288 "top level" business executives for the purpose of job placement and had access to exclusive mailing lists of "employers and top executives." Plaintiff further alleged that he signed a contract with Winter's company and paid him $2,450 in reliance upon these oral promises.

Plaintiff further alleged in count I that defendants failed to find him employment, an offer of employment, or even a job interview in violation of the agreement. He also alleged that defendants' oral promises were false and that they knew they were false when they made them. Plaintiff prayed for $2,450 in damages with interest, costs, and attorney fees.

Plaintiff repeated the above allegations in count II and additionally stated that he reasonably relied on defendants' promises in signing the contract, that defendants knew that he would rely on their promises in signing the contract, that defendants knew that their promises were false, and that defendants induced him, through their

promises, to sign the contract. Plaintiff prayed for $2,450 in compensatory damages, $10,000 in punitive damages, which he later amended to an amount for the jury to determine, interest, costs, and reasonable attorney fees.

Defendants filed separate answers to plaintiff's complaint, admitting that he signed a contract for their services but denying plaintiff's allegations of any oral promises or guarantees of employment.

The jury trial began May 1, 1984, and continued through May 8. The only testimony was that of plaintiff and defendants, with various documents admitted into evidence. Plaintiff testified that he contacted Meyer as a result of defendants' newspaper advertisement. After their meeting, Meyer introduced him to Winter. Plaintiff further testified that defendants orally guaranteed his employment at their next meeting, June 11, 1976. During the last week of June, Meyer telephoned plaintiff and repeated the oral guarantee. Plaintiff further testified that on August 2, 1976, he met with defendants and reviewed the previously stated guarantee. Such being his understanding, he signed the contract and paid defendants $2,450. The contract contained none of the statements that he alleged defendants to have made. On November 12, 1976, plaintiff mailed a letter and an invoice to Winter, asking Winter to return the $2,450 together with an additional $4,853.50 in expenses that he claimed to have incurred in seeking employment subsequent to signing the contract. The trial court received both the letter and the invoice into evidence.

On cross-examination, however, plaintiff testified that he told defendants at their June 11, 1976, meeting that a person with his background should be able to obtain employment with an annual salary of between $28,000 and $40,000 within 60 days.

Winter testified that his company, Richard Allen Winter, Ltd., employed him. Winter testified, *inter alia,* that a salesperson first interviews a candidate for his program; that he does not accept everyone that this company interviews; and that once he accepts someone into his program, he charges that person a fee. After he receives information from a client, he prepares various biographical sketches and other descriptive material. Winter additionally testified that his program does not find employment for a client. Rather, his program markets a client to a position, *i.e.,* the client finds employment under his direction and guidance. Winter denied plaintiff's allegations of an oral guarantee of employment and representations that he had exclusive access to business executives.

Meyer testified that Richard Allen Winter, Ltd., employed him

as a salesperson since May 1, 1976. He further testified that he founded a company known as Executive Guidance Counselors on the same date and that this company was a sales agent for Richard Allen Winter, Ltd. Meyer acknowledged meeting with plaintiff alone and then meeting with plaintiff and Winter. At these meetings, he explained to plaintiff what Winter could do to help him find employment. Meyer denied promising plaintiff that plaintiff would have employment within 60 days of initial testing and evaluation at a salary of at least $40,000, and that he was 100% successful in job placement.

On May 8, 1984, the jury returned a verdict for plaintiff, awarding him $6,437.49 in compensatory damages under count I and $9,333.33 in punitive damages under count II, totaling $15,770.82. The trial judge entered judgment thereon the next day. Defendants filed a motion seeking a judgment *n.o.v.* or, alternatively, a new trial. On December 28, 1984, the trial court denied defendants' motion for a judgment *n.o.v.*, but granted their motion for a new trial, vacating the judgment entered on the verdict. He ruled that the verdict was against the manifest weight of the evidence. Both plaintiff and defendants appeal.

I

■■■ Plaintiff contends that the trial judge abused his discretion by granting defendants' motion for a new trial. On a motion for a new trial, a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is against the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32, 36.) A verdict is not against the manifest weight of the evidence unless a conclusion opposite to that reached by the jury is clearly evidence or the jury's verdict is palpably erroneous. "Manifest weight" is that weight which is clearly evident, plain and indisputable. (*Didier v. Jones* (1978), 61 Ill. App. 3d 22, 27, 377 N.E.2d 572, 575-76.) A motion for a new trial lies within the sound discretion of the trial court; a reviewing court will not disturb its decision unless a clear abuse of discretion exists that affirmatively appears in the record. One sees an abuse of discretion where it appears that the trial court granted a new trial simply because it would have decided the case differently had it been the jury or because it concluded that the inferences that it drew from the evidence were more reasonable than those drawn by the jury. *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 1087-88, 401 N.E.2d 1145, 1153.

█ Plaintiff brought an action against defendants for fraud. To prevail in a cause of action for fraud, a plaintiff carries a heavy burden. A plaintiff must prove (1) that the defendant made a statement, (2) of a material nature as opposed to opinion, (3) untrue, (4) known by the person making it to be untrue, believed by him to be untrue, or made in culpable ignorance of its truth or falsity, (5) relied upon by the victim to his detriment, (6) made for the purpose of inducing reliance, and (7) such that the victim's reliance led to his injury. Further, the plaintiff must prove the first four elements by direct or circumstantial evidence that is clear and convincing. Whether or not the plaintiff has proved these elements adequately is a question of fact for the finder of fact. *Gordon v. Dolin* (1982), 105 Ill. App. 3d 319, 324, 434 N.E.2d 341, 345-46.

█ Courts have defined "clear and convincing" evidence most often as the quantum of proof that leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question. Although stated in terms of reasonable doubt, courts consider clear and convincing evidence to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense. The spectrum of increasing degrees of proof, from preponderance of the evidence, to clear and convincing evidence, to evidence beyond a reasonable doubt, would be clearer if the degrees of proof were defined, respectively, as probably true, highly probably true, and almost certainly true. *In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 13-14, 398 N.E.2d 198, 203.

█ After reviewing the record, we agree with the trial judge that the jury's verdict was against the manifest weight of the evidence. Neither the contract that plaintiff signed nor any other document admitted into evidence contains any employment guarantee. The only evidence of an oral guarantee of employment lies in plaintiff's testimony. Additionally, plaintiff's testimony indicates that the idea of a job with an annual salary of approximately $40,000 was his and not that of defendants. This evidence does not support plaintiff's claim as highly probably true. Because plaintiff failed this requirement of an action for fraud, the jury's verdict for plaintiff was clearly erroneous. We hold that the trial judge did not abuse his discretion by granting defendants' motion for a new trial.

## II

█ Defendants contend that the trial judge abused his discretion by denying their motion for a judgment *n.o.v.* A directed verdict or

a judgment *n.o.v.* should be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) The *Pedrick* court also stated: " 'We have rather carefully preserved the distinction between the evidentiary situation which will require a new trial [citation], and that justifying direction of a verdict or judgment *n.o.v.* There is, in our judgment, excellent reason for so differentiating to be found in the radically different results of allowance of the two motions, and *we believe a more nearly conclusive evidentiary situation ought to be required before a verdict is directed than is necessary to justify a new trial'* " (Emphasis added.) (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32, 35, citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 509-10, 229 N.E.2d 504, 513.) Thus, a jury verdict may fail the stringent standard for a judgment *n.o.v.* and yet be against the manifest weight of the evidence. *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 311, 356 N.E.2d 32.

After reviewing all of the evidence in its aspect most favorable to plaintiff, we cannot say that it so overwhelmingly favors defendants that no contrary verdict based on that evidence could ever stand. We hold that the trial judge did not abuse his discretion in denying defendants' motion for a judgment *n.o.v.*

### III

Defendants also contend that the trial judge abused his discretion by denying their motion for a judgment *n.o.v.* on the issue of punitive damages, found in count II of plaintiff's complaint. A jury may award punitive damages when fraud, actual malice, deliberate violence or oppression accompanies the tort, or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others. Punitive damages are in the nature of punishment and a warning and example to deter the defendant and others from committing like offenses in the future. While the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify their imposition is properly one of law. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359.

Because of their penal nature, the law does not favor punitive damages and courts must not award them improperly or unwisely. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 188, 384

N.E.2d 353.) Further, courts should award punitive damages only if the defendant's misconduct is above and beyond the conduct needed for the basis of the action. *O'Brien v. State Street Bank & Trust Co.* (1980), 82 Ill. App. 3d 83, 86-87, 401 N.E.2d 1356, 1359.

Applying these principles to the case at bar, we conclude that the trial judge should have entered a judgment *n.o.v.* on the issue of punitive damages. In count II of his complaint, plaintiff pleaded only the elements that an action for fraud requires. He did not plead any facts showing oppression or violence, or that defendants acted with such gross negligence as to indicate a wanton disregard of his rights. Although plaintiff alleged that defendants acted intentionally, he did not plead any facts that show defendants' conduct rising above and beyond that necessary for an action for fraud. Viewing all of the evidence in its aspect most favorable to plaintiff, we hold that it so overwhelmingly favors defendants, on the issue of punitive damages, that no contrary verdict based on the evidence could ever stand. Thus, we reverse that part of the trial court's order granting a new trial on count II of plaintiff's complaint, and we remand the cause to the trial court with directions that it enter a judgment *n.o.v.* on count II for defendants.

For the foregoing reasons, we affirm that part of the judgment of the circuit court of Cook County granting defendants' motion for a new trial. We also affirm that part of the judgment denying defendants' motion for a judgment *n.o.v.* as to count I of plaintiff's complaint. We reverse that part of the judgment granting a new trial and denying defendants' motion for a judgment on count II and remand the cause with directions that a judgment *n.o.v.* be entered on count II.

Affirmed in part and reversed in part and remanded.

LINN, P.J., and JIGANTI, J., concur.