RICHARD/ALLEN/WINTER, LTD., Plaintiff and Counterdefendant-Appellant, v. JAMES A. WALDORF *et al.*, Defendants and Counterplaintiffs-Appellees.

Second District   No. 2—86—0119

Opinion filed June 10, 1987.—Supplemental opinion filed on denial of rehearing July 15, 1987.

Samuel H. Young, of Samuel Young P.C., of Skokie, for appellant.

Dennis E. Shanahan, Jr., of Elmhurst, for appellees.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

In a jury trial, counterdefendant, Richard/Allen/Winter, Ltd. (RAW), was found to have violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFDBPA) (Ill. Rev. Stat. 1985, ch. 121½, par. 262 *et seq.*), and the jury awarded $1,000 in compensatory and $1,000 in punitive damages for counterplaintiff Ronald V. Erickson (Erickson), and $0 for compensatory and $1,000 in punitive damages for counterplaintiff James A. Waldorf (Waldorf). RAW appealed the jury's verdict. On appeal, RAW raises several issues. Given our decision we will address the following issues only: (1) whether the matter should be remanded for a bench trial based on counterdefendant's contention that causes of action arising under the ICFDBPA may not be decided by a jury; and (2) whether the two counterplaintiffs' causes of action were properly joined. We affirm in part, reverse in part and remand.

On November 1, 1984, RAW filed a complaint in Du Page County against Waldorf under the small claims provisions of Supreme Court Rule 286 (87 Ill. 2d R. 286) seeking to collect $612.50 pursuant to an "Executive Guidance Engagement Agreement" entered into between Waldorf and RAW on May 24, 1978. (Case No.

84-SC-6027.) RAW also filed a small claims complaint against Erickson seeking to collect $450 pursuant to an "Executive Guidance Engagement Agreement" entered into between RAW and Erickson on February 7, 1979. (Case No. 85-SC-0220.)

RAW is a management consulting firm, located in Lake Forest, whose services include executive marketing, executive out-placement and executive search. RAW is not a licensed employment agency in Illinois. Waldorf and Erickson are two clients who signed with RAW to obtain career guidance services. Waldorf and Erickson are represented by the same attorney, who filed answers and counterclaims on behalf of both of them. Over objections by RAW, the trial court on its own motion consolidated the two cases on the basis of commonality of issues and witnesses. Erickson's and Waldorf's second amended answer and counterclaim filed November 8, 1985, are grounded on the claim that RAW violated the ICFDBPA. The prayer for relief requested both compensatory and punitive damages. Subsequently, RAW moved to dismiss with prejudice its complaint against Erickson and Waldorf. Therefore, only the counterclaim was litigated before the jury. Erickson and Waldorf were awarded $1,000 and $0 in compensatory damages, respectively, and $1,000 each in punitive damages. This appeal ensued.

RAW contends that the trial court erred in granting counterplaintiffs' jury request on the basis that the ICFDBPA does not specifically provide for a jury trial. We agree. Section 10a of the ICFDBPA provides in pertinent part:

"(a) Any person who suffers damage as a result of a violation of Sections 2 through 20 of this Act [ICFDBPA] committed by any other person may bring an action against such person. *The court, in its discretion* may award actual damages or any other relief *which the court* deems proper.
* * *

(c) In any action brought by a person under this Section, *the court may award*, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 121½, par. 270a.)

In analyzing this section we use traditional principles of statutory construction. A primary rule of statutory construction is that the intention of the legislature should be ascertained and given effect. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475-76, 433 N.E.2d 674; *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 369, 357 N.E.2d 1180.) In construing the intent of the legislature, the court

must look to the language of the statute, and that language should normally be given its ordinary meaning. (*Potts v. Industrial Com.* (1980), 83 Ill. 2d 48, 51, 413 N.E.2d 1285; *Finley v. Finley* (1980), 81 Ill. 2d 317, 326, 410 N.E.2d 12.) Furthermore, a statute should be read in consonance with constitutional principles. *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, 33, 282 N.E.2d 144; *Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 67, 401 N.E.2d 1235.

 Section 13 of article I of the Illinois Constitution of 1970 provides:

> "The right to trial by jury as heretofore enjoyed shall remain inviolate." (Ill. Const. 1970, art. I, sec. 13.)

This section has been judicially interpreted to stand for the principle that the constitutional right to trial by jury does not extend to actions unknown at common law. (*In re Estate of Millsap* (1979), 75 Ill. 2d 247, 255, 388 N.E.2d 374; *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 129, 478 N.E.2d 581.) This constitutional provision does not require that a jury trial be had in every case or preclude all restrictions on the exercise of that right. (*People ex rel. Cizek v. Azzarello* (1980), 81 Ill. App. 3d 1102, 1105-06, 401 N.E.2d 1177.) Therefore, our inquiry focuses on the issue of whether an action brought under the ICFDBPA constitutes a "special or statutory [proceeding] unknown to the common law." *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 485, 313 N.E.2d 161; *In re Estate of Haines* (1977), 51 Ill. App. 3d 163, 169, 366 N.E.2d 548.

Section 2 of the ICFDBPA provides in pertinent part:

> "[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Ill. Rev. Stat. 1985, ch. 121½, par. 262.)

This statute has received considerable judicial interpretation. (See *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267; *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040; *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815.) These cases and others generally stand for the proposition that the ICFDBPA has created a new cause of action different from the traditional common law tort of fraud.

■ In Illinois to prevail in a cause of action for fraud, a plaintiff must prove: (1) that the defendant made a statement; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known by the person making it to be untrue, believed by him to be untrue, or made in culpable ignorance of its truth or falsity; (5) that was relied upon by the victim to his detriment; (6) made for the purpose of inducing reliance; and (7) such that the victim's reliance led to his injury. (*Parsons v. Winter* (1986), 142 Ill. App. 3d 354, 359, 491 N.E.2d 1236; *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 139, 213 N.E.2d 89.) The majority of these elements has been virtually eliminated by the ICFDBPA. In *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040, an action for recovery under both common law fraud and the ICFDBPA, the court held: "The Act affords *** broader consumer protection than does the common law action of fraud since the Act also prohibits any 'deception' or 'false promise.' Therefore, even if [plaintiff] is unable to establish all the elements of fraud, he might still recover under the Act *** ." (64 Ill. App. 3d 190, 198, 380 N.E.2d 1040.) A closer analysis of a few specific decisions is necessary in order to ascertain which common law elements of fraud are no longer required to be alleged or proved under the ICFDBPA.

■ The court in *American Buyers Club of Mt. Vernon, Illinois, Inc. v. Honecker* (1977), 46 Ill. App. 3d 252, 361 N.E.2d 1370, held:

"[T]he intention of the seller—his good or bad faith—is not important. Rather, we focus our attention upon the effect that that conduct might have on the consumer who was unjustifiably misled into purchasing that which he did not intend to purchase." (46 Ill. App. 3d 252, 259, 361 N.E.2d 1370.)

In *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815, the court stated:

"[T]he language employed in the Consumer Fraud Act clearly indicates that it is the intent of the defendant in his conduct, not the reliance or belief of the plaintiff, which is the pivotal point upon which an action arises. [Citation.] Section 2 of the Act specifically provides that the question of whether a per-

son has been misled, deceived or damaged is not an element of an action brought under the Act." (47 Ill. App. 3d 266, 272-73, 361 N.E.2d 815.)

Finally, the court in *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267, after a thorough review of several judicial decisions interpreting the ICFDBPA, noted:

"There is a clear mandate from the Illinois legislature that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties. [Citations.]

Since the Act affords even broader consumer protection than does the common law action of fraud, it is clear that a plaintiff suing under the Act need not establish all of the elements of fraud as the Act prohibits any deception or false promise. (Citation.] And it is clear from the language of the Act, particularly its reference to false promises, that liability is not limited to existing material facts. Furthermore, it is well established that under the Act the intention of the seller (his good or bad faith) is not important and a plaintiff can recover under the Act for innocent misrepresentations. [Citations.]" (102 Ill. App. 3d 483, 495, 429 N.E.2d 1267.)

In fact, the ICFDBPA constitutes the only source to maintain a cause of action for innocent misrepresentation in Illinois. (*Miller v. Affiliated Financial Corp.* (N.D. Ill. 1984), 600 F. Supp. 987, 996.) From our analysis we, therefore, conclude that the ICFDBPA is a statutory enactment which created a new cause of action unknown at common law. Consequently, the counterplaintiffs in this case did not have a constitutionally guaranteed right to trial by jury.

The legislature, in enacting section 10a (Ill. Rev. Stat. 1985, ch. 121½, par. 270a) of the Act, did not specifically provide for a jury. As stated above, in construing statutes, our rule is to ascertain the intent of the legislature and give it effect, by examining the entire statute for guidance. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341, 473 N.E.2d 1313; *Balmes v. Hiab-Foco, A.B.* (1982), 105 Ill. App. 3d 572, 574-75, 434 N.E.2d 482.) In 1973, the State legislature amended the then existing Consumer Fraud Act (Ill. Rev. Stat. 1971, ch. 121½, par. 261 *et seq.*). That Act did not provide for jury trials. Specifically, it provided for equitable remedies as exemplified by the following pertinent provisions:

"Whenever it appears to the Attorney General that a per-

son has engaged in, is engaging in or is about to engage in any practice declared to be unlawful by this Act he may seek and obtain in an action in a Circuit Court an injunction prohibiting that person from continuing those practices or engaging therein or doing any acts in furtherance thereof after appropriate notice to that person. The notice must state generally the relief sought and be served in accordance with Section 5 of this Act at least 3 days before the institution of the action. The court may make such orders or judgments as may be necessary to prevent the use or employment by a person of any prohibited practices or which may be necessary to restore to any person in interest any moneys or property, real or personal which may have been acquired by means of any practice in this Act declared to be unlawful including the appointment of a receiver or the revocation of a license or certificate of registration authorizing that person to engage in business in this State or both in cases of substantial and willful violation of this Act." (Ill. Rev. Stat. 1971, ch. 121½, par. 267.)

Section 7 was amended in 1973 to read as follows:

"Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by Section 2 of this Act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by temporary or permanent injunction the use of such method, act or practice. *The Court, in its discretion,* may exercise all equitable powers necessary, including but not limited to: injunction; revocation, forfeiture or suspension of any license, charter, franchise, certificate or other evidence of authority of any person to do business in this State; appointment of a receiver; dissolution of domestic corporations or association suspension or termination of the right of foreign corporations or associations to do business in this State; and restitution.

In addition to the remedies provided herein, the Attorney General may request and this Court has authority to impose a civil penalty in a sum not to exceed $50,000 against any person found by the Court to have engaged in any method, act or practice declared unlawful under Section 2 of this Act." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 121½, par. 267.)

Extensive analysis of the legislative debate of House Bill 1548, the

bill amending the then existing Consumer Fraud Act, reveals that the legislature did not directly address the issue of whether private causes of actions brought under the amendment were to be tried without a jury. But, the following comments of Senator Rock, in opposition to the bill, suggest that the Senate was aware that generally consumer fraud actions would be heard *by the court* which was to decide as to the appropriate remedy:

> "[W]e are now saying in addition to the remedies provided herein the Attorney General may request and *the court has authority* to impose a civil penalty *** penalty in a sum not to exceed $50,000. That's press release material. Why do we need a fine of $50,000 for a violation of the, [*sic*] they don't call it the Consumer Fraud Act anymore under this bill, it's the Consumer Fraud and Deceptive Business and [*sic*] Practices Act." (73d Ill. Gen. Assem., Senate Proceedings, June 26, 1973, at 71-72.)

We observe that in both sections 7 and 10a, the phrase "the court in its discretion" appears. There is no doubt that in section 7 the phrase refers to equitable proceedings and, thus, proceedings without a jury. (See *Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 199 N.E.2d 797.) Parts of a comprehensive statutory scheme should be read *in pari materia* in order to ascertain the legislature's intent and to avoid injustice. (*In re Petition of Sullivan* (1985), 134 Ill. App. 3d 455, 460, 480 N.E.2d 1283; accord, *People v. Maya* (1985), 105 Ill. 2d 281, 473 N.E.2d 1287.) Therefore, we conclude that the legislature intended that actions brought under section 10a of the ICFDBPA (Ill. Rev. Stat. 1985, ch. 121½, par. 270a) are to be heard by a judge sitting without a jury.

Our conclusion is further supported by the ICFDBPA mandate to use the Federal Trade Commission Act (FTCA) (15 U.S.C. sec. 45 (1982)) as guidance in our interpretation of individual provisions. The FTCA has been consistently interpreted as not providing for a jury trial in cases concerning civil penalties. See *United States v. Reader's Digest Association, Inc.* (3d Cir. 1981), 662 F.2d 955, *cert. denied* (1982), 455 U.S. 908, 71 L. Ed. 2d 446, 102 S. Ct. 1253; *Mohawk Excavating, Inc. v. Occupational Safety & Health Review Com.* (2d Cir. 1977), 549 F.2d 859; *United States v. Olin Ski Co.* (S.D.N.Y. 1980), 503 F. Supp. 141.

In 1973 the Illinois legislature expressly exceeded the scope of the FTCA when, in section 10a, it created a private right of action under any subsection of section 2 of the ICFDBPA (Ill. Rev. Stat. 1985, ch. 121½, par. 262 *et seq.*). The legislature did not at that

time create a right to trial by jury.

We further note that the term "court" is nowhere defined in the ICFDBPA. When terms of a statute are not specifically defined, the words must be given their ordinary and popularly understood meanings. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937.) In its usual meaning, the language "[t]he court, in its discretion" (Ill. Rev. Stat. 1985, ch. 121½, par. 270a(a)) refers to judicial discretion based on legal interpretation of facts rather than to decisions rendered by a jury. See *People v. Donovan* (1941), 376 Ill. 602, 35 N.E.2d 54.

Also, it is often helpful to refer to dictionary definitions when seeking to ascertain the ordinary and popularly understood meaning of words used in a statute. (*Woodliff v. Department of Labor* (1985), 139 Ill. App. 3d 539, 540-41, 487 N.E.2d 645.) Black's Law Dictionary defines "court" as follows:

"The words 'court' and 'judge,' or 'judges,' are frequently used in statutes as synonymous. When used with reference to orders made by the court or judges, they are to be so understood." Black's Law Dictionary 318 (5th ed. 1979).

Therefore, since the ICFDBPA has created a cause of action unknown at common law, and the language of the Act does not specifically provide for a jury trial, the trial court erred in granting the counterplaintiff's jury request. We reverse and remand for a bench trial.

■ RAW also contends that Erickson's and Waldorf's causes of action were improperly joined. Section 2–1006 of the Code of Civil Procedure provides:

"[A]ctions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." (Ill. Rev. Stat. 1985, ch. 110, par. 2–1006.)

The consolidation of actions rests largely in the discretion of the trial court. (*Hilgers v. County of Tazewell* (1914), 264 Ill. 399, 106 N.E. 229; *People ex rel. Argo v. Henderson* (1981), 97 Ill. App. 3d 425, 428, 422 N.E.2d 1005.) Where separate causes are of the same nature, involve same or like issues and depend largely upon the same evidence, consolidation is not an abuse of discretion. (*Peck v. Peck* (1959), 16 Ill. 2d 268, 157 N.E.2d 249; *Stone v. City of Belvidere* (1976), 39 Ill. App. 3d 829, 350 N.E.2d 526.) We conclude that in this case the trial court did not abuse its discretion when it consolidated the two counterplaintiffs' causes of action.

The judgment of the circuit court of Du Page County is affirmed

in part and reversed in part, and the cause is remanded for further proceedings.

Affirmed in part, reversed in part and remanded.

NASH and INGLIS, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE LINDBERG delivered the opinion of the court:

Supplemental Opinion filed pursuant to appellant's "Motion for Ruling on Validity of Judgment Order Entered December 17, 1985 Pertaining to Attorneys [sic] Fees."

■ Our judgment of June 10, 1987, reversed and remanded all issues raised on appeal, including the award of attorney fees. The effect of reversal is to abrogate the trial court's judgment and leave the case as it stood prior to the judgment of the trial court. (*People ex rel. Krych v. Birnbaum* (1981), 101 Ill. App. 3d 785, 791, 428 N.E.2d 974.) Nonetheless, we clarify our judgment by specifically vacating the trial court's award of attorney fees.

■ Appellant requested a ruling by this court on the conduct of counterplaintiff's attorney, Dennis E. Shanahan, Jr., in the trial court. The appropriate forum for consideration of alleged improprieties of attorneys is the Attorney Registration and Disciplinary Commission of the supreme court. The supreme court has the exclusive authority to regulate the practice of law; it has the power to impose sanctions for unprofessional conduct so as to protect the public interest and guard the legal profession against reproach. (*Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 615, 505 N.E.2d 387.) The request is denied.

NASH and INGLIS, JJ., concur.