Edward H. TALBOT, Jr., Cecil Blake, Alvin A. Bosma, Ronald Caronti, Gurve Dallas, Jr., George Dvorak, Fred Eidenschink, Mario Fazio, Dennis M. Fitzgerald, Lawrence F. Foldy, George M. Forecki, Richard Glade, Robert L. Goss, Richard Grunert, Roger Harris, Robert A. Johnson, Ralph C. Kamradt, James R. Kennedy, Roy E. Knighton, Frank Leptich, Edward R. Magnuson, Edward Nykaza, Donald J. Pellikan, John A. Petrie, William D. Redis, Roger J. Reeder, George G. Schumert, William J. Struck, Mario P. Terzo, Robert H. Vengrin, John C. Vogel, and Robert A. Zuro, Plaintiffs–Appellants,

v.

ROBERT MATTHEWS DISTRIBUTING COMPANY, Neville Bros. Distributing, Inc., Jewel Companies Inc., Aubrey Neville, Robert Neville, Frank J. McMahon, James L. McMahon, individually and as President of Local 753, Milk and Ice Cream Drivers, and Allied Workers Union, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America and Local 753, Milk and Ice Cream Drivers and Allied Workers Union, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Defendants–Appellees.

No. 90–1105.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1991.

Decided April 10, 1992.

Charles J. DeGrange (argued), Robert Orman, Chicago, Ill., for plaintiffs-appellants.

Henry W. Sledz, Jr. (argued), M. David Bieber, Kovar, Nelson, Brittain, Sledz & Morris, Chicago, Ill., Stephen G. Daday (argued), Stitt, Klein & Daday, Inverness, Ill., Francis M. Pawlak, Burke, Wilson & McIlvaine, Donnelly A. Dybus, Kevin Conlon, Conlon & Dybus, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The plaintiffs are former route drivers for the Hillfarm Dairy division of Jewel Food Stores ("Jewel") under the terms of a collective bargaining agreement between Jewel and Local 753, International Brotherhood of Teamsters ("Union"). In June 1984, Jewel contracted with an independent distributor, Robert Matthews Distributing

Company ("Matthews"), to deliver Hillfarm Dairy milk to Jewel stores. The Union, through its president, James McMahon, negotiated a collective bargaining agreement with Matthews over the plaintiffs' objections and without a vote by Union members.[1] The agreement was executed on July 27, 1984, and Jewel guaranteed its terms and conditions by a separate letter agreement. The plaintiffs became Matthews employees, and their duties and responsibilities were substantially the same as when they had worked for Jewel.[2]

The plaintiffs delivered Hillfarm Dairy products for Matthews from August 1984 until April 1985, when the Hillfarm Dairy was closed in connection with a salmonella outbreak. Jewel then arranged for the plaintiffs to deliver Dean Food Company ("Dean") milk and dairy products to its stores. However, in September 1985, Jewel arranged for Dean's distributor, Neville Brothers Distributing Company ("Neville Brothers"), to deliver the products and the plaintiffs' employment was terminated.

The Union filed grievances alleging that Matthews breached its collective bargaining agreement with the plaintiffs and that Jewel breached its separate agreement by refusing to reemploy the plaintiffs. The Union also claimed that Frank McMahon, Jewel, Matthews, and Neville Brothers engaged in a fraudulent conspiracy to terminate the plaintiffs' employment. The latter grievance was submitted to the National Labor Relations Board (NLRB) for arbitration, but no action was taken for two years. In November 1987, the arbitrator dismissed the grievance because the Union failed to present evidence to support its allegations of a fraudulent conspiracy.

The Union, Jewel and Matthews subsequently agreed to submit to arbitration the question whether Jewel had any obligation under its separate letter agreement to rehire the plaintiffs. The arbitrator determined that Jewel was not required to rehire the plaintiffs to deliver Dean products. The arbitrator found that Jewel's obligations were limited to the terms and conditions of the collective bargaining agreement between Matthews and the plaintiffs, and that Jewel's decision to purchase Dean products did not violate that agreement.

While the arbitration was pending, the plaintiffs filed a complaint in the district court, which they subsequently amended three times.[3] The plaintiffs' third amended complaint alleged that the defendants secreted the ownership of Matthews and that they engaged in a fraudulent conspiracy to deprive the plaintiffs of their employment. Specifically, as amended, Count I asserted common law fraud and misrepresentation against all the defendants. Count II stated a claim against Matthews, Jewel and Neville Brothers for a violation of § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and alleged that the Union breached its duty of fair representation with regard to its conspiracy grievance. Count III alleged that Jewel violated § 301 of the LMRA for breaching its separate letter agreement and its collective bargaining agreement with the plaintiffs. The count also alleged that the Union breached its duty of fair representation in grieving the plaintiffs' breach of con-

---

1. The plaintiffs allege that Frank McMahon, James McMahon's cousin, acted as the Union's business agent during the negotiations.

2. Aubrey Neville and Robert Neville owned one-third of the shares of Matthews and the remainder was placed in trust for the benefit of Frank McMahon.

3. In May 1987, the plaintiffs filed a complaint against Matthews, Neville Brothers and Jewel seeking to recover overtime pay pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 (1983). In August 1987, the plaintiffs amended their complaint to allege that Matthews was an undercapitalized shell corporation and an alter ego of Neville Brothers and that Neville Broth-

ers was a joint employer. The plaintiffs filed a second amended complaint in December 1987, in which they added Aubrey Neville, Robert Neville, Frank McMahon, James McMahon and the Union as defendants. The second amended complaint alleged common law fraud and misrepresentation, a RICO claim, a breach of contract claim pursuant to 29 U.S.C. § 185, a claim for overtime pay, and sought to stay the pending arbitration proceedings due to the alleged participation of the Union in a fraudulent conspiracy. In June 1988, the plaintiffs filed their third amended complaint to include the arbitrator's decisions on the grievances filed by the Union.

tract claim. Count IV stated a putative claim against all defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962 and 1964. Count V sought to recover overtime pay from Jewel, Neville Brothers and Matthews, and is not at issue in this appeal.

The defendants moved to dismiss Counts I through IV of the plaintiffs' third amended complaint and moved to strike certain paragraphs of the complaint as scandalous. The plaintiffs moved for Rule 11 sanctions and for leave to amend their third amended complaint.

The district court granted the defendants' motion to dismiss Counts I and IV with prejudice. The court found that the defendants' arguments as to Counts II and III requested the court to consider matters outside the pleadings, including the arbitrator's opinion and award and the terms of the plaintiffs' collective bargaining agreements with Matthews and Jewel. The court treated the motions to dismiss as motions for summary judgment under Federal Rule of Civil Procedure 56, and granted summary judgment in favor of the defendants on those counts.[4] The district court also struck three paragraphs of the plaintiffs' third amended complaint as scandalous, and denied the plaintiffs' motions for sanctions and for leave to amend their third amended complaint. The plaintiffs appeal and we affirm.

## I

In considering the district court's dismissal of Counts I and IV, we must accept as true all the plaintiffs' well-pleaded factual allegations and the inferences reasonably drawn from them. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir.1990). We shall affirm the dismissal only if the plaintiffs have failed to allege any set of facts upon which relief may be granted. *Id.*

Count I alleged that the defendants fraudulently conspired to deprive the plaintiffs of their jobs. The plaintiffs asserted that James McMahon and Frank McMahon, as Union representatives and majority owners of Matthews, and Aubrey Neville and Robert Neville, owners of Neville Brothers and minority owners of Matthews, colluded with Jewel to transfer and ultimately terminate their employment. The district court dismissed this claim on the basis that it was preempted by two federal labor law preemption doctrines.

The district court found that Count I stated a claim for failure to bargain in good faith. *See Brown v. Keystone Consolidated Industries, Inc.*, 680 F.Supp. 1212, 1219 (N.D.Ill.1988) (claim by employee that union and employer fraudulently withheld information while negotiating a shutdown agreement that lead to his termination constituted a claim for failure to bargain in good faith). Accordingly, the court found that the plaintiffs' state law claim was preempted under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245–46, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959) because the defendants' conduct is arguably prohibited as an unfair labor practice under § 8 of the National Labor Relations Act (NLRA), 29 U.S.C. § 158.

The *Garmon* doctrine is designed to protect the primary jurisdiction of the NLRB from federal and state courts, *Keehr v. Consolidated Freightways of Delaware, Inc.*, 825 F.2d 133, 136 (7th Cir.1987), by providing the NLRB with exclusive jurisdiction to determine whether given conduct falls within the NLRA. *Garmon*, 359 U.S. at 244–45, 79 S.Ct. at 779–80.

The plaintiffs argue that the district court mischaracterized their claim as a claim for failure to bargain in good faith because the Union failed to bargain at all due to the majority ownership of Matthews by Union officials. However, the plaintiffs' allegations that the transfer of their employment to Matthews without a vote by

---

**4.** The plaintiffs motioned to reconsider the district court's entry of summary judgment on Count II. The court granted the motion to reconsider and set a briefing schedule, and subsequently granted summary judgment to the defendants on Count II.

Union members violated the Union by-laws, that James McMahon illegally terminated their collective bargaining agreement with Jewel and crushed all resistance to the transfer with serious threats of violence, that the defendants failed to disclose pertinent facts and made misrepresentations, that immediately after the transfer Frank McMahon received illegal payments from Neville Brothers, and that the transfer of the delivery work to Neville Brothers resulted in a reduction of labor costs for the defendants support the district court's finding that Count I alleged conduct which is arguably prohibited by § 8 of the NLRA. *See Kolentus v. Avco Corp.,* 798 F.2d 949, 961 (7th Cir.1986), *cert. denied,* 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 832 (1987) (employer has duty to disclose certain information to employees); *Road Sprinkler Fitters Local Union No. 669, etc. v. NLRB,* 676 F.2d 826, 831 (D.C.Cir.1982) (unilateral change by employer of employees' terms and conditions of employment); *Brown,* 680 F.Supp. at 1219.

■ The plaintiffs correctly assert that the defendants must demonstrate that their case is one that the NLRB could legally decide in their favor. *International Longshoremen's Assoc. v. Davis,* 476 U.S. 380, 395, 106 S.Ct. 1904, 1914, 90 L.Ed.2d 389 (1986); *Wells v. General Motors Corp.,* 881 F.2d 166, 169 (5th Cir.1989), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990). "The party asserting preemption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been authoritatively rejected by the courts or the [NLRB]." *Davis,* 476 U.S. at 395, 106 S.Ct. at 1914. That party must put forth enough evidence to enable the court to find that the NLRB reasonably could uphold a claim based on such an interpretation. *Id.*

■ The defendants read Count I as alleging that two changes in the terms and conditions of the plaintiffs' employment violated § 8 of the NLRA—the transfer of their employment to Matthews without a vote of the Union members and the unilateral transfer of delivery work to Neville Brothers which resulted in their termi-

nation. In the first instance, the Union could argue that the plaintiffs failed to sufficiently support their allegation that the Union's by-laws required ratification by Union members for the transfer. The liberal notice pleading allowed by the federal rules requires the complaint to include the operative facts upon which a plaintiff bases his claim. *See Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 198 (7th Cir.1985). Although the plaintiffs' complaint refers to a section of the by-laws, the language of the provision was not set out and a copy of the by-laws or at least the relevant section was not attached. Moreover, the defendants suggest that once the Union agreed to the transfer, Jewel and Matthews were powerless to interfere in the ratification process. *See Teamsters Local Union No. 281 v. McLaughlin & Moran, Inc.,* 299 N.L.R.B. No. 7 at 8–9 (1990).

With regard to the second allegation, the defendants maintain that they could prevail by demonstrating that Jewel's decision to close the Hillfarm Dairy was economically motivated to discontinue a basic phase of its operations, *see First National Maintenance Corp. v. NLRB,* 452 U.S. 666, 686, 101 S.Ct. 2573, 2584–85, 69 L.Ed.2d 318 (1981), that Matthews went out of business altogether, *see Textile Workers Union v. Darlington Mfg. Co.,* 380 U.S. 263, 273–74, 85 S.Ct. 994, 1001, 13 L.Ed.2d 827 (1965), and that Neville Brothers was neither an alter ego nor a successor of Matthews. *See Amalgamated Meat Cutters & Butcher Workmen v. NLRB,* 663 F.2d 223, 226–27 (D.C.Cir.1980) (alter ego); *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 43, 107 S.Ct. 2225, 2236, 96 L.Ed.2d 22 (1987) (successor). The defendants have met their burden.

■ Even if the defendants' conduct is arguably prohibited under § 8 of the NLRA, however, the plaintiffs' claim is not preempted under *Garmon* if the activity regulated is merely a peripheral concern of the labor laws or if the conduct touches interests so deeply rooted in local feeling that preemption cannot be inferred absent

compelling congressional direction. *Garmon*, 359 U.S. at 243–44, 79 S.Ct. at 779; *Davis*, 476 U.S. at 392–93, 106 S.Ct. at 1913. In determining whether these exceptions apply to a given case, the state's interest in remedying the effects of the challenged conduct must be balanced against the interference with the NLRB's ability to adjudicate the controversy and the risk that the state will approve conduct that the NLRA prohibits. *Belknap, Inc. v. Hale*, 463 U.S. 491, 498–99, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983); *Kolentus*, 798 F.2d at 961.

The alleged failure of the defendants to bargain in good faith is more than a peripheral concern under the NLRA. "Insuring that employers and employees bargain with each other in good faith is of central importance under the Act." *Id.* at 961; *see* 29 U.S.C. § 158(d). Here, as in *Kolentus*, the state's interest in redressing the alleged fraud is outweighed by the risk that the resolution of the dispute under state law might differ from that under the NLRA. *See id.* The district court properly noted that the plaintiffs' attempt to bolster the alleged state interest by referring to the salmonella outbreak is without merit.

■ Of critical importance in determining whether litigation of a state claim necessarily involves a risk of interference with the unfair labor practice jurisdiction of the NLRB, is whether the controversy presented by the state claim is identical to that which could have been presented to the NLRB. *Belknap*, 463 U.S. at 510, 103 S.Ct. at 3183; *Kolentus*, 798 F.2d at 961. The plaintiffs' common law fraud and misrepresentation claim against the defendants is identical to a claim which could have been pursued before the NLRB. In both cases, the "key inquiry" would be whether the defendants made fraudulent misrepresentations, failed to disclose pertinent information, and engaged in collusion and self-dealing in transferring the plaintiffs' employment to Matthews and in ultimately transferring the delivery work to Neville Brothers. *See Kolentus*, 798 F.2d at 961. In fact, the Union filed a grievance alleging a conspiracy to deprive the plaintiffs of their jobs before the NLRB—without including itself as a defendant, of course—but the grievance was dismissed after the Union failed to present evidence to support its allegations. *See id.* The district court correctly determined that Count I was preempted by the NLRA.

■ The district court also found that Count I was preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, because its resolution is dependent upon analysis of the terms of the plaintiffs' collective bargaining agreements with Matthews and Jewel. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988); *United Steelworkers of America, etc. v. Rawson*, 495 U.S. 362, 368–69, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990); *Douglas v. American Information Technologies Corp.*, 877 F.2d 565, 569 (7th Cir.1989). Section 301 mandates resort to federal law in order to ensure uniform interpretation of collective bargaining agreements, and thus promote the peaceable, consistent resolution of labor-management disputes. *Lingle*, 486 U.S. at 404, 108 S.Ct. at 1880.

■ To determine whether resolution of Count I is dependent upon the collective bargaining agreements, we must consider the elements of the plaintiffs' state-based cause of action for fraud. *See Lingle*, 486 U.S. at 405–06, 108 S.Ct. at 1881; *Douglas*, 877 F.2d at 570. Under Illinois law, the plaintiffs must establish: (1) that the defendants made a statement; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known by the person(s) making it to be untrue, believed to be untrue, or made in culpable ignorance of its truth or falsity; (5) that was relied upon by the plaintiffs to their detriment; (6) made for the purpose of inducing reliance; and (7) such that the plaintiffs' reliance led to their injury. *Richard/Allen/Winter, Ltd. v. Waldorf*, 156 Ill. App.3d 717, 719, 109 Ill.Dec. 239, 241, 509 N.E.2d 1078, 1080 (1987).

The plaintiffs claimed that Jewel had assured them through a separate letter agreement that it would guarantee the terms of their collective bargaining agreement with Matthews and would rehire them if their employment was terminated. The defendants argue that they cannot be charged with fraud because they merely exercised their legal rights. *See Skidmore v. Johnson*, 334 Ill.App. 347, 361, 79 N.E.2d 762, 768 (1948). To determine whether the elements of a fraud claim are met or whether the defendants were merely exercising their rights, a court would have to refer to the letter agreement as well as the plaintiffs' collective bargaining agreement with Matthews.

The district court properly rejected the plaintiffs' suggestion that Count I requires interpretation of their collective bargaining agreement with Matthews only for the limited purpose of determining damages. The plaintiffs' claim that the defendants fraudulently deprived them of their employment is directly related to the terms and conditions of their employment; therefore, resolution of the claim (and any determination of damages) will be dependent on an analysis of the terms of the agreements under which the plaintiffs were employed. The district court correctly dismissed Count I on the basis that it was preempted by § 301.

■ The district court also dismissed Count IV, which alleged a RICO claim against the defendants. The plaintiffs alleged three frauds, which occurred between 1984 and 1988, to establish a pattern of racketeering activity in violation of 18 U.S.C. § 1962: (1) the defendants defrauded the plaintiffs by transferring their employment from Jewel to Matthews; (2) the defendants fraudulently terminated their employment with Matthews; and (3) the Union failed to fairly represent them in arbitration. The plaintiffs alleged that the defendants used the U.S. mail in furtherance of the frauds in violation of 18 U.S.C. § 1341, and that they suffered economic loss as a result of the defendants' fraudulent conduct.

The plaintiffs argue that the district court erred in determining that Count IV was preempted by the NLRA. Citing *United States v. Boffa*, 688 F.2d 919 (3rd Cir.1982), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983), they assert that even if the defendants' conduct is arguably prohibited by the NLRA, the defendants are not exempted from prosecution under RICO. In *Boffa*, the Third Circuit held that where a federal statute independently proscribes the conduct as well as the NLRA, the NLRA does not preclude enforcement of that statute. *Id.* at 931–933. However, *Boffa* is distinguishable. Here, the underlying conduct of the plaintiffs' RICO claim is wrongful *only by virtue of the labor laws*, therefore the claim is preempted under the NLRA. *See Brown*, 680 F.Supp. at 1224–25; *Butchers' Union, Local No. 498, etc. v. SDC Invest., Inc.*, 631 F.Supp. 1001, 1011 (E.D.Cal.1986); *United States v. International Brotherhood of Teamsters*, 708 F.Supp. 1388, 1394 (S.D.N.Y.1989).

■ The district court also found that Count IV failed to allege a pattern of racketeering activity. To state a RICO claim, the plaintiffs must allege, *inter alia*, that the defendants engaged in a pattern of racketeering activity.[5] *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *see H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *J.D. Marshall International, Inc. v. Redstart, Inc.*, 935 F.2d 815, 820 (7th Cir.1991); *United States Textiles, Inc. v. Anheuser–Busch Co.*, 911 F.2d 1261, 1266–67 (7th Cir.1990); *Olive Can Co. v. Martin*, 906 F.2d 1147, 1150–52 (7th Cir. 1990); *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.*, 883 F.2d 48, 50 (7th Cir.1989). Relevant factors include "the number and variety of

---

**5.** For a thorough analysis of this issue, *see* Bart A. Karwath, Note, *Has the Constituency of Continuity Plus Relationship Put an End to RICO's Pattern of Confusion?*, 18 American Journal of Criminal Law 201 (1991) (discussing the current status of RICO's pattern requirement among the circuits).

predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986).

Even if we accept that the alleged fraudulent conspiracy by the defendants extended over a period of years, the allegations involve multiple acts of mail fraud in furtherance of a single scheme—to deprive the plaintiffs of their employment—and resulted in nondistinct injuries. These allegations fail to establish a sufficient pattern of racketeering activity. *See J.D. Marshall,* 935 F.2d at 821 (no pattern where complaint alleged violations which constituted a single scheme, involved a single victim and were predicated upon a single transaction); *Triad Assoc., Inc. v. Chicago Housing Authority,* 892 F.2d 583, 595 (7th Cir.1989) (no pattern where one general scheme, two transactions—only one of which came to fruition, one victim and one type of injury were alleged), *cert. denied,* —— U.S. ——, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990); *Sutherland v. O'Malley,* 882 F.2d 1196, 1204–05 (7th Cir.1989) (same); *Jones v. Lampe,* 845 F.2d 755, 758 (7th Cir.1988) (same); *Tellis v. United States Fidelity & Guaranty Co.,* 826 F.2d 477, 478 (7th Cir.1987) (same). Therefore, the plaintiffs' RICO claim was properly dismissed.

## II

■ The district court granted the defendants summary judgment on Counts II and III. We review a grant of summary judgment *de novo, La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 905 (7th Cir.1990), viewing the record and all reasonable inferences drawn from it in the light most favorable to the party opposing the motion. *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990). We must be satisfied that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.PRO. 56(c); *First*

*Wisconsin Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir.1990).

Counts II and III presented hybrid § 301/fair representation claims. *See DelCostello v. Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). Count II alleged that the defendants entered into a conspiracy to deprive the plaintiffs of their employment in violation of the federal labor laws.[6] The plaintiffs asserted that Matthews breached its collective bargaining agreement with the plaintiffs by causing the Hillfarm Dairy to close and that the Union breached its duty of fair representation by transferring the plaintiffs' collective bargaining agreement from Jewel to Matthews, by secreting from them the ownership of Matthews, and by failing to adequately represent them with regard to the conspiracy grievance in the arbitration proceedings. Count III alleged that Jewel breached its collective bargaining agreement with the plaintiffs and its subsequent letter agreement. The count also alleged that the Union breached its duty of fair representation in grieving the plaintiffs' breach of contract claim. Both Counts II and III sought to overturn the arbitration award.

■ Section 301 provides federal jurisdiction for employees to sue their employer for breach of a collective bargaining agreement and their union for breach of its duty of fair representation. *See* 29 U.S.C. § 185(a); *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967). As the district court noted, hybrid § 301/fair representation claims are interdependent: to prevail against either an employer or the Union, the plaintiffs must show that their discharge was contrary to a collective bargaining agreement and must also demonstrate that the Union breached its duty of fair representation. *See DelCostello,* 462 U.S. at 164–65, 103 S.Ct. at 2290–91; *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); *Hines v. Anchor Motor Freight, Inc.,* 424

---

6. In pleading Count II in the alternative to Count I in their third amended complaint, the plaintiffs acknowledged the possibility that the district court might find that Count I was preempted by federal labor laws. *See* Plaintiffs' Third Amended Complaint, p. 23.

U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976); *Superczynski v. P.T.O. Services, Inc.,* 706 F.2d 200, 203–04 (7th Cir.1983); *Cote v. Eagle Stores, Inc.,* 688 F.2d 32, 35 (7th Cir.1982), *cert. denied,* 459 U.S. 1218, 103 S.Ct. 1222, 75 L.Ed.2d 458 (1983).[7]

■ With regard to Count III, the district court found that no issue of material fact existed whether Jewel's decision to purchase Dean dairy products after the Hillfarm Dairy was closed breached its collective bargaining agreement with the plaintiffs and whether Jewel's obligation under its separate letter agreement was limited to the terms of Matthews agreement with the plaintiffs and therefore Jewel had no obligation to rehire the plaintiffs. Because the plaintiffs failed to prove an essential element of their hybrid claim, the district court found it unnecessary to determine whether the Union breached its duty of fair representation in grieving the plaintiffs' breach of contract claim. *See White v. Anchor Motor Freight, Inc.,* 899 F.2d 555, 559 (6th Cir.1990) (if claim that employer breached collective bargaining agreement fails then breach of duty of fair representation claim against union must necessarily fail with it); *Bagsby v. Lewis Bros., Inc.,* 820 F.2d 799, 801 (6th Cir.1987) (same); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (under Rule 56(c), plaintiff's failure to establish an essential element of his case renders all other facts immaterial). The district court properly granted the defendants summary judgment on Count III.

■ Although the district court initially granted summary judgment in favor of the defendants on Count II, neither the arbitrator nor the district court addressed Matthews' obligations under its collective bargaining agreement with the plaintiffs until the plaintiffs raised the issue in their motion to reconsider. *See* footnote 4, *supra.*

The plaintiffs submitted affidavits purportedly establishing that Matthews or its agents caused the salmonella contamination at the Hillfarm Dairy or allowed it to continue in order to cause the plaintiffs' termination.

We agree with the district court's determination that the affidavits failed to raise issues of fact whether Matthews breached any term of the collective bargaining agreement. The district court also found that the report from the Office of the Illinois Inspector General, finding that sabotage was a possibility but also stating that there were "no significant leads or indications that sabotage was the cause of the outbreak," did not support a rational inference that Matthews caused the contamination or otherwise deprived the plaintiffs of their jobs. Because the plaintiffs failed to state a claim of breach against Matthews, the district court did not consider whether the Union breached its duty of fair representation. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. The district court properly granted the defendants summary judgment on Count II.

### III

■ The plaintiffs argue that district court erred in striking certain paragraphs of the their third amended complaint—paragraphs 38 and 42 of the general allegations and paragraph 53(b)(ii) of Count III—as scandalous under Federal Rule of Civil Procedure 12(f). Rule 12(f) provides that a court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice. *See Beck v. Cantor, Fitzgerald & Co.,* 621 F.Supp. 1547, 1565 (N.D.Ill.1985); *Gilbert v. Eli Lilly & Co.,* 56 F.R.D. 116, 120 n. 7 (D.P.R.

---

7. The plaintiffs' reliance on *Breininger v. Sheet Metal Workers International Assoc. Local Union No. 6,* 493 U.S. 67, 80, 110 S.Ct. 424, 434, 107 L.Ed.2d 388 (1989) for the proposition that a fair representation claim can be filed as a separate cause of action and need not be filed as a hybrid § 301/duty of fair representation claim is misplaced. *Breininger* is inapplicable here because a § 301 hybrid claim was not filed in that case. *See White v. Anchor Motor Freight, Inc.,* 899 F.2d 555, 560–62 (6th Cir.1990).

1972). The decision whether to strike material as scandalous is within the discretion of the district court. *Alvarado–Morales v. Digital Equipment Corp.*, 843 F.2d 613, 618 (1st Cir.1988).

■ The paragraphs at issue alleged or implied that the defendants intentionally caused the salmonella outbreak at the Hillfarm Dairy or allowed it to continue in order to consummate a fraudulent scheme against the plaintiffs. The district court found that these allegations were devoid of any factual basis. The only "facts" presented by the plaintiffs were: a rumor from a Jewel employee that someone on the "inside" could taint the milk, the fact that each outbreak was found to have been caused by the same unusual strain of salmonella, and the report by the Illinois Office of the Inspector General stating that deliberate sabotage was a possibility. That Jewel pleaded in a prior case that salmonella was most likely caused by sabotage or deliberate indifference does not establish a factual basis for the plaintiffs' assertion that the defendants caused the contamination—which resulted in several deaths and injuries among consumers—in order to deprive them of their jobs. The district court did not abuse its discretion in striking the paragraphs as scandalous.

### IV

■ The plaintiffs contend that the district court erred in denying their motion for sanctions based on certain false and contradictory pleadings filed by some of the defendants. Rule 11 of the Federal Rules of Civil Procedure prohibits the filing of pleadings that are not reasonably based in the law or in fact and forbids the filing of pleadings that are interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increased cost of litigation. *Burda v. M. Ecker Co.*, 954 F.2d 434, 439 (7th Cir.1992). The grant or denial of sanctions under Rule 11 by the district court is reviewed under an abuse of discretion standard. *Id.; Mars Steel Corp.*

*v. Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir.1989).

■ The district court denied the plaintiffs' motion for sanctions on the ground that the court did not rely upon the particular pleadings in rendering its decision. The district court did not err in not addressing the motion more thoroughly; when the reasons for denying a colorable motion are apparent from the record, the court need not make detailed findings or explanations. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1084 (7th Cir.1987); *Local 232, Allied Industral Workers v. Briggs & Stratton Corp.*, 837 F.2d 782, 788–89 (7th Cir.1988). The district court properly denied the plaintiffs' motion for sanctions.

### V

■ Finally, the plaintiffs argue that the district court abused its discretion in denying them leave to amend or recast their third amended complaint to include a claim pursuant to the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401, *et seq.*[8] Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Whether to grant leave to amend a pleading is a matter purely within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *J.D. Marshall*, 935 F.2d at 819. The denial of a motion to amend a pleading will be overturned only if the district court abused its discretion by refusing to grant leave without any justifying reason. *Id.; Jones v. Psimos*, 882 F.2d 1277, 1285 (7th Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

■ In seeking to amend their complaint, the plaintiffs did not submit a proposed amendment but argued that they had already pleaded the requisite facts to state causes of action under §§ 101 and 501 of the LMRDA. In their third amended complaint, the plaintiffs alleged that "the mem-

---

**8.** That the plaintiffs sought to recast or amend Count I as a claim under the LMRDA further

supports the district court's finding that it was preempted by federal labor law.

bers of the Union never voted to accept the [collective bargaining agreement with Matthews], nor the transfer of their employment from Jewel to Matthews, in violation of Section 27(A) of the By–laws of [the Union]." They claim that this constitutes a violation of § 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1). We disagree.

Section 101(a)(1) guarantees to every union member "equal rights ... to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings." 29 U.S.C. § 411(a)(1). To state a claim under § 101(a)(1), a union member must allege a denial of rights accorded to other members. *Calhoon v. Harvey*, 379 U.S. 134, 138–39, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964); *see Grant v. Chicago Truck Drivers*, 806 F.2d 114, 117 (7th Cir. 1986) (focus of § 101(a)(1) is on discrimination); *McGinnis v. Local Union 710, International Brotherhood of Teamsters*, 774 F.2d 196, 199 (7th Cir.1985), *cert. denied*, 475 U.S. 1121, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986). There is no provision in the LMRDA that requires that a labor contract be submitted to the membership for ratification. *Ackley v. Western Conference of Teamsters*, 958 F.2d 1463, 1463 (9th Cir. 1992); *Alexander v. International Union of Operating Engineers*, 624 F.2d 1235, 1240 (5th Cir.1980). Section 101(a)(1) protects the rights of members to vote on collective bargaining agreements only when the constitution, by-laws or articles of a union so provide. *Ackley* at 1463; *Christopher v. Safeway Stores, Inc.*, 644 F.2d 467, 470 (5th Cir.1981); *Confederated Independent Unions v. Rockwell–Standard Co.*, 465 F.2d 1137, 1140 (3rd Cir. 1972). A failure to follow a union's internal rules, including its procedures governing contract ratifications, constitutes a violation of the union's obligations to its members, and is actionable under § 301 of the LMRA, 29 U.S.C. § 185(a). *Ackley* at 1463. The plaintiffs failed to allege that they were not accorded identical rights that other members received; therefore, the plaintiffs failed to establish a violation of § 101(a)(1).

The plaintiffs also failed to state a claim under § 501 of the LMRDA, 29 U.S.C. § 501. The plaintiffs' third amended complaint alleged that Union officials acted in collusion with employers in self-enrichment schemes adverse to the interests of the union members. Section 501 requires union officers "to hold [the union's] money and property solely for the benefit of the [union]," and was adopted primarily to address the problem of corruption among union officials. *See McNamara v. Johnston*, 522 F.2d 1157, 1163 (7th Cir.1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). Where a union officer personally benefits from union funds, a court in a section 501 suit may determine whether expenditure of the funds, notwithstanding its authorization by the union's constitution or by-laws, is so manifestly unreasonable as to evidence a breach of fiduciary duty. *Council 49, American Federation of State, etc. v. Reach*, 843 F.2d 1343, 1347 (11th Cir.1988). Although the plaintiffs alleged that union officials personally benefitted by colluding to deprive the plaintiffs of their jobs, the plaintiffs could not sue for a violation of § 501(a) because they failed to meet the requirements of § 501(b). The plaintiffs did not allege that an unsuccessful demand was made upon the union or its officers to seek relief against the union officials at issue or that such a demand would have been futile. *See Adams–Lundy v. Association of Professional Flight Attendants*, 844 F.2d 245, 248 (5th Cir.1988); *McNamara*, 522 F.2d at 1162–63.

The district court also noted that the plaintiffs were not entitled to amend or recast their complaint in an attempt to reassert allegations contained in previous complaints. *See Bloomington v. Westinghouse Electric Corp.*, 891 F.2d 611, 617 (7th Cir.1989) (motion to amend denied where proposed amendment did not materially alter the prior pleading); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809–10 (9th Cir.1988) (amendment failed to cure the previous pleadings). The district court

did not abuse its discretion in denying the plaintiffs' motion to amend.

The judgment of the district court is AFFIRMED.