[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendants, Pratt Whitney, Gerald Mudd, and Vincent Scarpitti, have moved for summary judgment on Counts One and Two the Complaint[1] on the grounds that those claims are preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151
et seq. Counts One and Two allege that Pratt promised the plaintiffs certain transfer rights and job security not included in the Collective Bargaining Agreement with Pratt. The defendants argue that the right to transfer and layoff procedures are mandatory subjects of collective bargaining under the NLRA, which are within the exclusive jurisdiction of the National Labor Relations Board (the "Board"). San Diego Bldg. Trades Council v.Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).
Factual and Procedural Background
The plaintiffs were formerly employed at Pratt's North Haven manufacturing facility as "cutter/grinders." They were assigned to the "Tool Services" business unit at the North Haven facility where they sharpened various tools used in the plant's manufacturing processes. The plaintiffs' employment was governed by the terms of the Agreement Between International Association of Machinists and Aerospace Workers, AFL-CIO Aeronautical Industrial District Lodge 91 and Affiliated Local 700, 707, 1746 and 1746A and Pratt Whitney and Power Systems Division — International Fuel Cells effective December 9, 1991 until December 4, 1994 (the "Agreement"). The Agreement contained the following language concerning transfer and layoff rights:
 In the case of an indefinite layoff for lack of work, CT Page 13013 employees shall be laid off and recalled by noninterchangeable occupational groups within specified seniority areas in accordance with their seniority (length of continuous service with the company since the most recent date of hire); provided, however, the employees designated as "I" (interchangeable) within a job family and seniority area shall be laid off and recalled in accordance with their seniority within such job family. Article VIII, Section 1 (a).
 Nothing herein shall preclude the company from offering a transfer to an employee scheduled to be laid off from a job in one occupational group and seniority area to a job in a different occupational group or seniority area in which no laid-off employee retains seniority . . . .If the employee accepts such a transfer or recall, his seniority thereafter shall be in the occupational group and seniority area to which he transferred . . . and he shall have no seniority in his former occupational group or seniority area. Article VIII, Section 1 (b).
 (a) In the event the company transfers a major operation, such as the 1986 Gear Box move, or department between plants covered by this Agreement, the employees in the affected major operation or department will be given the opportunity to move with the work if other like work is not available in the affected plant.
 (b) In the event that such affected employees decline to exercise an offer to move with the transferred work, any resulting imbalance in the workforce shall be adjusted as provided elsewhere in this article. Article VIII, Section 20.
Defendant Scarpitti was the Manager of Tool Service at Pratt's North Haven facility during the time period relevant to the Complaint. He was the direct supervisor of the defendant Mudd, who supervised each of the plaintiffs. Defendant Lawlor was Human Resources Representative for several units at the North Haven facility from 1989 until his layoff in September, 1992. Scarpitti called a meeting during the Summer of 1992 to announce the effect of the restructuring of the North Haven operations. CT Page 13014
The Complaint alleges the following concerning the foregoing meeting:
 19. In or about the summer of 1992, the [plaintiffs] were called to a meeting by a personnel representative of Pratt Whitney at which such representative, and/or other agents or employees of Pratt Whitney, solicited [the plaintiffs] for transfer to the Southington Pratt Whitney facility.
 20. At that meeting, the personnel representative of Pratt 
Whitney, as well as other Pratt Whitney agents, employees or officers, including Lawlor, Mudd and Scarpetti (sic), represented the following to [the plaintiffs]:
 a) that there was to be a lay-off at the North Haven Pratt Whitney facility; and
 b) that each of [the plaintiffs] would be given the opportunity to transfer to Southington or to a different Pratt Whitney location before being subjected to said lay-off.
The Agreement did not provide the plaintiffs with the definitive transfer opportunity that was allegedly promised at the meeting. See Foy v. Pratt Whitney Group, 127 F.3d 229, 235
(2d Cir. 1997) (plaintiffs' claims "based on a promise that went beyond the terms of the CBA — an unqualified right to transfer before layoff.")
The parties do not dispute that the solicitation to transfer to the Southington facility was made at the aforementioned meeting, nor that none of the plaintiffs accepted the transfers offered. Thereafter the plaintiffs were not offered any further opportunities to transfer and their employment was terminated in October, 1992, or February, 1993. The defendants deny that Pratt represented that the plaintiffs would be afforded additional transfer opportunities prior to layoff
In October, 1994, the plaintiffs filed a three-count Complaint against the defendants, which alleged intentional and negligent misrepresentation and a violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes §§42-110b et seq. ("CUTPA"). On November 10, 1994, the defendants CT Page 13015 removed this action to federal court on the basis that the plaintiffs' claims were preempted by the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 et seq. On June 12, 1995, the United States District Court for the District of Connecticut, Dorsey, C.J., held that the LMRA preempted the plaintiffs' negligent misrepresentation claim and, therefore, the district court had federal question jurisdiction pursuant to28 U.S.C. § 1331.
On July 2, 1996 Judge Dorsey granted the defendants' Motion for Summary Judgment on the grounds that the plaintiffs' claims were preempted under San Diego Bldg. Trades Council v. Garmon,359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), in that the misrepresentations alleged in the Complaint constituted a violation of section 8 of the NLRA. Judge Dorsey did not reach the issue of whether the plaintiffs' claims were also preempted by the LMRA.
The plaintiffs appealed the ruling of the district court to the Second Circuit Court of Appeals, which reversed the district court's ruling on the grounds that the case should not have been removed to the district court because the LMRA did not preempt the negligent misrepresentation claims. The Second Circuit stated:
 The principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied. "[W]here the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is pre-empted." Hawaiian Airlines, 512 U.S. at 260-62, 114 S.Ct. at 2248 (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988)) (emphasis added); Hernandez v. Conriv Realty Assocs., 116 F.3d 35, 38 (2d Cir. 1997). However, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994) (citing Lingle, 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12.)
See Foy v. Pratt Whitney Group, 127 F.3d 229, 233 (2nd Cir. 1997).
The Second Circuit ordered the case remanded to this court. CT Page 13016 In so doing, the Court noted that it had not reached the substantive issue of Garmon preemption and that "[o]f course, upon remand the state court may yet consider the Garmon
preemption issue." 127 F.3d at 231, 232, 236, n. 3, 237 n. 4.
Discussion of the Law and Ruling
Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81,595 A.2d 334 (1991); Lees v. Middlesex Ins. Co., 219 Conn. 644, 650,594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact;D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434,429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 380, 381; Burnsv. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson, 176 Conn. 304, 309,407 A.2d 971 (1978); Strada v. Connecticut Newspapers, Inc.,193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batickv. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); New MilfordSavings Bank v. Roina, 38 Conn. App. 240, 244, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stam,224 Conn. 524, 530, cert. denied, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993);Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116 (1990). Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried."Wilson v. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989).
Section 9(a) of the NLRA, 29 U.S.C. § 159, imposes a duty on an employer to bargain collectively with a union representative chosen by its employees. The union representative CT Page 13017 becomes the employees' exclusive bargaining representative. MedoPhoto Supply Corp. v. NLRB, 321 U.S. 678, 683-84, 64 S.Ct 830,88 L.Ed.2d 1007 (1944). Therefore, it is "a violation of the essential principle of collective bargaining and an infringement of the Act for the employer to disregard the bargaining representative by negotiating with individual employees, whether a majority or a minority, with respect to wages, hours and working conditions . . ." Id at 684. Direct dealing with the employees is prohibited by § 9(a) and constitutes an unfair labor practice under § 8(a)(5) because such conduct circumvents the workers' § 7 right to select a representative and bargain collectively. NLRB v. Pratt Whitney Air Craft Div.United Technologies Corp., 789 F.2d 121, 134 (2d Cir. 1986).
Under San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236,79 S.Ct. 773, 3 L.Ed.2d 775 (1959), claims under state law which allege conduct that may violate § 8 of the NLRA are preempted based on the primary jurisdiction of the National Labor Relations Board. The primary rationale for Garmon preemption is the potential for conflict between state and federal law, "with the disharmonies inherent in two systems, one federal the other state, of inconsistent standards of substantive law and differing remedial schemes." 359 U.S. at 242. The Court in Garmon stated that when "the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." Id. at 244.
The plaintiffs here seek to have a jury award them a benefit to which they were not entitled under the Agreement. That benefit included transfer rights and job security not afforded to their fellow union workers. Federal labor policy prohibits an employer from directly promising such benefits to unionized employees. InJ.I. Case Co. v. NLRB, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed.2d 762
(1944), the employer argued that it was not required to bargain with its employees' union because it had entered into individual contracts with the employees, which contracts prohibited such bargaining. The Court held that individual contracts do not eliminate the obligation of an employer to bargain with a union over appropriate subjects of collective bargaining and that "[w]herever private contracts conflict with [the NLRA's] functions, they obviously must yield or the Act would be reduced to a futility." Id. at 337. The Court further stated:

CT Page 13018 advantages to individuals may prove as disruptive of industrial peace as disadvantages. They are a fruitful way of interfering with organization and choice of representatives; increased compensation, if individually deserved, is often earned at the cost of breaking down some other standard thought to be for the welfare of the group, and always creates the suspicion of being paid at the long-range expense of the group as a whole. Such discriminations not infrequently amount to unfair labor practices.
321 U.S. at 338-39.
It is undisputed that the plaintiffs here were all members of a bargaining unit represented by the Union at the time that the alleged promises concerning the plaintiffs' rights with respect to layoffs and transfers occurred. An employer that bypasses the union to negotiate directly with represented employees violates § 8 of the NLRA, and any attempt by Pratt officials to deal directly with the plaintiffs concerning mandatory subjects of collective bargaining would constitute "direct dealing" in violation of the NLRA. See, e.g. Detroit Edison Co., No. 7-CA-32263, 310 N.L.R.B. 564, 1993 NLRB LEXIS 210 (N.L.R.B. Mar. 4, 1993) (employer violated § 8(a)(5) and (1) by communicating directly to employees a "sweetened proposal" for phasing out a job classification).
"Wages, hours, and other terms and conditions of employment" are mandatory subjects of collective bargaining. Section 8(d) NLRA, 29 U.S.C. § 158 (d). Transfer and layoff rights are mandatary subjects of collective bargaining. Wood v. Nat'lBasketbal Ass'n., 809 F.2d 954 (2d Cir. 1987) (layoffs);Eby-Brown Co., No. 25-RD-1171, 1986 NLRB LEXIS 484, *406, *408 (N.L.R.B. July 26, 1996) (Transfers); Tel Plus Long Island, Inc.,
313 N.L.R.B. No. 47, 1993 NLRB LEXIS 1259, *76-77, 116 (N.L.R.B. Nov. 26, 1993) (transfers).
In Wood the plaintiff claimed that the collective bargaining agreement between the players' union and the National Basketball Association violated antitrust laws. Id. at 956. Wood argued that the college draft and the salary cap negotiated in the collective bargaining agreement unlawfully prevented him from obtaining his full market value because he could not negotiate fairly based on his unique skills as a point guard. Id. at 959-60. The Court stated that salaries, layoffs, and promotions could be predicated CT Page 13019 on the seniority of the union members because each of those matters are mandatory subjects of bargaining pursuant to § 8 (d) of the NLRA. Id. at 960, 962.
The plaintiffs rely on the case of Milne Employees Ass'n. v.Sun Carriers, Inc., 960 F.2d 1401 (9th Cir. 1991) to avoid NLRA preemption of their misrepresentation claims. In Milne the plaintiffs claimed that the employer misrepresented its plans for closure of the plant to induce the plaintiffs to continue to work. The Ninth Circuit held that the employer's conduct did not violate the NLRA because:
 An employer's decision to shut down part of its business for economic reasons is not a mandatory subject of bargaining under § 8(d) of the NLRA. First Nat'l Maintenance Corp. v. NLRB, 452 U.S. 666, 686, 101 S.Ct. 2573, 2584-85, 69 L.Ed.2d 318 (1981). An employer, however, must bargain in good faith about the effects of a plant closure "in a meaningful manner and at a meaningful time." Id. at 682, 101 S.Ct. at 2582.
960 F.2d at 1414.
The Court in Milne addressed the distinction between misrepresentations concerning the decision to close a plant, and those concerning effects on the employees of a plant closure:
 Thus, unlike an employer who falsely promises to relocate employees upon a plant's closure or who misrepresents the terms of severance pay, the instant facts appear to implicate management's prerogative to close rather than management's obligation to bargain about the effects of closure.
Id. at 1415.(emphasis added).
In Voilas v. Local #371, 170 F.3d 367 (3d Cir. 1999), GM represented that a certain Trenton New Jersey Plant would close and, contrary to rumors, would not remain in operation. In reliance on those representations 191 employees opted to accept an early retirement package. Two days after the final, deadline for accepting the early retirement package, GM announced plans to pursue the sale of the plant as a going concern. Thereafter GM was unable to find a buyer, but did keep the plant open. CT Page 13020
Employees who had taken early retirement brought suit alleging that GM falsely represented to the Trenton employees that the plant would close and that no efforts were being made to keep the plant open, when in fact the company was actively seeking to sell the factory as a going concern. GM argued that its conduct which was the subject of the plaintiffs' complaint would constitute a refusal to bargain under § 8(a)(5) of the NLRA and/or bargaining in bad faith under § 8(d) of the Act.
The Court stated:
 Section 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees" and section 8(d) imposes a requirement that such bargaining be done "in good faith." 29 U.S.C. § 158 (a)(5), (d). However, the duties to bargain and to do so in good faith only attach to the "mandatory subjects of bargaining," which are those set forth in section 8(d), i.e., "wages, hours, and other terms and conditions of employment." Local Union No. 189, Amalgamated Meat Cutters Butcher Workmen of N. Am., AFL-CIO v. Jewel Tea Co., 381 U.S. 676, 685, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965) (citation omitted); see also NLRB v. Katz, 369 U.S. 736, 742-43, 82 S.Ct. 1107, 8 L.Ed.2d 230
(1962)
 If an employer imposes a unilateral change with respect to a mandatory subject, it thereby violates the statutory duty to bargain and is subject to the Board's remedial order. See. Katz, 369 U.S. at 742-43, 82 S.Ct. 1107. But, conversely, a unilateral change as to a non-mandatory subject and the refusal to bargain over a non-mandatory subject are not unfair labor practices. NLRB v. Wooster Div. of Borg-Warner, 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958). The decision to close a plant is plainly one that the employer can make and announce unilaterally; that decision is not a mandatory subject of bargaining. See First Nat'l Maintenance Corp. v. NLRB, 452 U.S. 666, 686, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981). But see id. at 677 n. 15, 101 S.Ct. 2573 n. 15 (noting that employer has a duty to bargain over the effects of such a closure.) Consequently, there is no Board jurisdiction, and therefore no Garmon
preemption, regarding complaints that an employer refused to bargain over a plant closing.
CT Page 13021Id. at 379.
In Milne and Voilas the misrepresentations concerned subjects that were not mandatory subjects of collective bargaining, and, therefore, were not preempted under Garmon. However in Talbot v.Robert Matthews Distributing Co., 961 F.2d 654 (7th Cir. 1992);Kolentus v. Avco Corp., 798 F.2d 949, 961 (7th Cir. 1986); andSerrano v. Jones Laughlin Steel Co., 790 F.2d 1279 (6th Cir. 1986) the plaintiffs' claims of fraudulent misrepresentation were preempted because they concerned mandatory subjects of collective bargaining.
In Talbot the Court held that plaintiffs' fraud claim concerning a mandatory subject of collective bargaining, namely a transfer, was preempted by the NLRA; "plaintiffs' common law fraud and misrepresentation claim against the defendant is identical to a claim which could have been pursued before the NLRB." 961 F.2d at 661.
In Serrano the employer negotiated with the Union in an effort to avoid a shutdown of a certain plant. The negotiations led to an agreement which granted the employer the right to depart from certain provisions of the collective bargaining agreement. Thereafter representatives of the employer spoke to members of the Union, urging them to ratify the agreement. The plaintiffs claimed that the plant superintendent promised that if the Union accepted the concessions, the plant would remain open. Within four months after the ratification of the agreement, the employer informed the Union that it had decided to close the plant.
The Union filed a grievance against the employer, but terminated the grievance without taking it to binding arbitration. Thereafter, 133 former employees of the closed plant filed an action alleging fraud based on the assertion that, despite its unequivocal statements of intent to rebuild the plant, the employer actually intended to do so only if it could obtain an extension from the United States Environmental Protection Agency of deadlines for bringing the plant into compliance with the Clean Air Act.
The Court in Serrano held that the fraud claims were preempted under Garmon because they concerned conduct arguably prohibited by the NLRA. Like the plaintiffs in the present case, the plaintiffs in Serrano attempted to distinguish the employer's CT Page 13022 conduct from conduct which was prohibited by the NLRA and, thereby avoid preemption under one or both of the following exceptions to Garmon preemption: that the offending conduct was peripheral to the concerns of federal labor law, Garmon, supra, 243-244; and/or that preemption by federal law would "intrude so deeply into areas traditionally left to local law" as to upset the traditional federal-state balance. Amalgamated Ass'n. of St.,E.R. M.C. Employees v. Lockridge, 403 U.S. 274, 297,91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). The Court rejected those arguments, stating:
 [W]hether classified as a violation of the general duty to bargain in good faith or the more particular duty to bargain over the effects of a plant closure, the conduct about which plaintiffs are complaining was arguably a violation of section 8. This conduct is continuing to take advantage of the concessions without revealing the likelihood of a shutdown.
 Failure of an employer to bargain in good faith about terms and conditions of employment is not peripheral to the concerns of federal labor law; rather, it strikes at the heart of one of the basic concerns of that law.
790 F.2d at 1287.
The alleged misrepresentations in this case clearly concerned mandatory subjects of collective bargaining. Thus, this case is analogous to Talbot, Kolentus and Serrano, and not analogous toMilne.
For the foregoing reasons, the First and Second Counts of the Complaint are preempted under San Diego Bldg. Trades Council v.Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) based on the primary jurisdiction of the National Labor Relations Board. Therefore, summary judgment may enter in favor of the defendants on those counts.
By the court,
Aurigemma, J.